LORRAINE LOMBARDO *VS.* MELVIN GERARD & others.[1]

No. 91-P-67.

Middlesex. February 21, 1992. - May 27, 1992.

Present: PERRETTA, FINE, & GILLERMAN. JJ.

*Bankruptcy*, Stay of other proceedings. *Divorce and Separation*, Effect of
  bankruptcy proceedings. *Mortgage*, Foreclosure. *Lis Pendens. Practice,
  Civil*, Lis pendens notice.

The automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362
  (a) (1982), did not prohibit a wife from filing a separate support com-
  plaint in a Probate Court two and one-half years after the husband filed
  his bankruptcy petition, where the wife's complaint was not based on a
  claim that arose before commencement of the bankruptcy case. [593-
  594]
The recording of a memorandum of lis pendens, with respect to a Probate
  Court proceeding against a bankrupt doctor, was not prohibited by the
  automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362 (a)
  (3) and (4) (1982), where the order of the Bankruptcy Court confirm-
  ing the debtor's plan for payment of his creditors was entered before
  the lis pendens was recorded, and where nothing in the record before
  this court established that either the plan or the order confirming the
  plan preserved the locus as part of the bankruptcy estate, rather than
  vesting it in the debtor, as provided by 11 U.S.C. § 1327 (b) (1982).
  [594-596]
A Federal bankruptcy judge abstained from applying Federal law to a con-
  troversy before him that involved family law matters. [596-597]
Assignees of a mortgage, who took with notice that the mortgagor was the
  defendant in an action brought by one who claimed an interest in the
  mortgaged property, as described in a recorded memorandum of lis
  pendens, were bound by the judgment ultimately rendered in the pend-
  ing action. [597-598]
A memorandum of lis pendens, recorded pursuant to a judge's order al-
  lowing a motion under G. L. c. 184, § 15, was effective notwithstanding
  the fact that it did not bear an endorsement of the judge's finding, re-
  quired by § 15, that the pending litigation affected title to, or the use
  and occupancy of, the locus, where the memorandum contained the de-
  tailed information required by the statute and was recorded with a copy

[1]Brooke Adams; ATF Dorcus Pdts., Inc.; Defined Benefit Pension Plan;
Lillian Goldstein; AC Weary, Inc. Profit Sharing Pension Plan; Metrofund
of Massachusetts, Ltd.; and Alan H. Segal.

of the motion itself, stating that the moving party claimed "an interest" in the locus and bearing a stamp that recited its allowance by the judge. [598-599]

Enforcement of a lis pendens memorandum recorded under G. L. c. 184, § 15, did not unjustly enrich the plaintiff in the pending action. [600]

CIVIL ACTION commenced in the Middlesex Division of the Probate and Family Court Department on November 14, 1988.

The case was heard by *Vincent F. Leahy*, J.

*John W. Burt* for the defendants.

*Frank J. Ciano* for the plaintiff.

GILLERMAN, J. A judge of the Probate Court, following a trial of a complaint for declaratory judgment, permanently enjoined the defendants as holders, by assignment, of a duly recorded mortgage[2] granted by the owner of the fee (Jason Lombardo) from proceeding with the foreclosure of the mortgage. The mortgage covered property (the locus) which was the marital home of the plaintiff, her husband, Jason, and their two children. We affirm the judgment.[3]

1. *The facts.* The judge made comprehensive findings and rulings based upon undisputed facts. The controversy involved proceedings by various parties in the Bankruptcy Court, the Probate Court and the Land Court over a period of five years. A detailed statement of the chronological sequence of events, rulings, and judgments is required.

On December 6, 1984, Jason Lombardo, the plaintiff's husband, filed a petition for relief under c. 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301-1330 (1982), with the United States Bankruptcy Court for the District of Massachusetts. Approximately four months later (April 23, 1985), Maria Lombardo, Jason's mother, conveyed the locus, which is located partly in Middlesex county and partly in Suffolk

---

[2]The original mortgagee was Metrofund of Massachusetts, Ltd.

[3]Our reasons differ in certain respects from those of the judge, but we are free to adopt different reasoning. See *Beeler* v. *Downey*, 387 Mass. 609, 613 n. 4 (1982); *Doeblin* v. *Tinkham Dev. Corp.*, 7 Mass. App. Ct. 720, 722 (1979).

county, to Jason. The locus then became part of the bank-ruptcy estate. 11 U.S.C. § 1306(a)(1). On January 7, 1986, the bankruptcy judge entered an order confirming Jason's plan for the payment of his creditors, see 11 U.S.C. §§ 1321-1325,[4] and on August 4, 1986, Jason borrowed $25,000 from Capitol Bank and Trust Company and granted a mortgage covering the locus to secure the debt.

Domestic difficulties, meanwhile, were developing between the plaintiff and her husband. On June 18, 1987, the plaintiff filed a complaint against her husband under the provisions of G. L. c. 209A, alleging that Jason, on or about June 12, 1987, had physically abused her. Jason was ordered to vacate the marital home. Shortly thereafter, the plaintiff learned that Jason was about to mortgage the marital home without her consent, in consequence of which the plaintiff, on June 23, 1987, filed a complaint for separate support,[5] see G. L. c. 209, § 32, which prayed for the conveyance of the locus to her, together with a motion for leave to file a lis pendens, which recited that she claimed an interest in the locus. See G. L. c. 184, § 15 (a lis pendens may be available[6] if the pending proceedings affect the title to real property or "the use and occupation thereof"). After a hearing, the motion was allowed by a first Probate Court judge (the first judge), and the memorandum of lis pendens (which, inter alia, re-cited the pendency of the complaint brought by the plaintiff against Jason Lombardo in the Middlesex Probate Court), the motion, and the affidavit of service, were duly recorded in the Middlesex, but not the Suffolk, registry of deeds on June

---

[4]The provisions of the plan are not in the record before us.

[5]The complaint alleged that Jason, without justifiable cause, was not providing the plaintiff with suitable support, and that the plaintiff was ac-tually living apart from Jason for justifiable cause, namely, physical abuse in respect of which Jason had been restrained and ordered to vacate the marital home.

[6]The defendants do not argue that the last clause of the first paragraph of G. L. c. 184, § 15, affects the memorandum of lis pendens recorded by the plaintiff. Therefore we do not consider the point. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In any event, as discussed more fully below, the memorandum was recorded and the de-fendants received actual notice of the plaintiff's proceedings.

24, 1987. The first judge made no written findings other than the allowance of the motion. See G. L. c. 184, § 15, second par.

The plaintiff's information proved to be correct. On June 26, 1987, with the approval of the Bankruptcy Court, Jason granted a mortgage (which is the subject of these proceedings) covering the locus and securing a note of $77,000. The mortgage was recorded on the same day, and funds of the mortgagee were advanced to Jason on June 30, 1987. Another Probate Court judge (the second judge) found that the plaintiff did not receive any part of these funds. The mortgage proceeds had been applied to discharge the prior mortgage to Capitol Bank and Trust Company, to pay $13,676.22, on account, to Jason's creditors, and to pay the balance of $42,274.57 to Jason.

Jason soon was in default of his obligations under the mortgage note, and on November 25, 1987, the mortgagee sought leave from the Bankruptcy Court to foreclose on the mortgage. On the same day and in the same court, after learning of Jason's bankruptcy proceedings, the plaintiff sought the Bankruptcy Court's approval of the lis pendens previously recorded. The bankruptcy judge declined to rule on either application; the second probate judge found, on testimony before him, that the bankruptcy judge "deferred to the Probate Court." Arrangements were then made to pay the entire balance owed to Jason's bankruptcy creditors, and on March 23, 1988, an order of discharge of Jason was entered in the Bankruptcy Court. See 11 U.S.C. § 1328.

The controversy then returned to the Probate Court. On June 8, 1988, the first judge entered a final judgment on the plaintiff's separate support petition ordering, inter alia, Jason to convey the locus to the plaintiff. The judge relied on the provisions of G. L. c. 208, § 34, as the basis for his order. It is undisputed that that order was erroneous.[7] Nevertheless, Jason did not claim an appeal from this judgment.

---

[7]That section applies only to actions for divorce. An order for the conveyance of real estate under another provision, G. L. c. 209, § 30, requires a finding of abandonment, and there was no such finding here.

The Land Court, on October 18, 1988, entered judgment against Jason and authorized the mortgagee, the defendants herein, to make an entry and sell the property covered by the mortgage. On November 14, 1988, the plaintiff recorded the judgment in the separate support proceeding in the Middlesex South District registry of deeds which had the same effect as a duly recorded deed, see G. L. c. 183, §§ 43-44, and on the same day she filed a complaint for declaratory judgment against the defendants seeking to enjoin the foreclosure. The second judge preliminarily, and, after a full hearing, permanently enjoined the foreclosure. The defendants filed a timely claim of appeal.

2. *Discussion.* Relying upon *Amonte* v. *Amonte*, 17 Mass. App. Ct. 621 (1984), the defendants argue that the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362 (a) (1982), prohibited the allowance and recording of the lis pendens. In order to consider that argument, we must first discuss whether the automatic stay provisions prohibited the filing of the separate support complaint.

First, *Amonte* v. *Amonte, supra,* has no bearing on the facts of this case. There, the wife's separate support proceedings were commenced two years *before* the husband's bankruptcy proceedings were filed. While the bankruptcy proceedings were pending, the wife obtained a judgment in the separate support proceedings ordering support payments and the conveyance of certain real estate by the husband to the wife. We held that, while the automatic stay provisions of § 362(a)(1) apply to the financial and property settlement aspects of domestic proceedings, the exception provided by 11 U.S.C. § 362(b)(2) (1982) (collection of alimony and support payments[8]) is not available unless the final judgment for alimony or support is entered *before* the filing of the bankruptcy petition. *Id.* at 625-626.

Here the issue is the scope of the automatic stay provisions, not the scope of the exception provided by § 362(b). Putting to one side, as we have said, the effect of the record-

---

[8]See *Amonte* v. *Amonte, supra* at 625 n. 7.

ing of the lis pendens, it is clear that the automatic stay provisions did not prohibit the commencement of the later filed separate support petition. Section 362(a)(1) applies to any proceeding against the debtor "that was or could have been commenced *before* the commencement of the case under this title, or to recover a claim against the debtor that arose *before* the commencement of the case under this title . . ." (emphasis added). The plaintiff's separate support complaint was filed two and one-half years after the filing of Jason's bankruptcy petition, and there was no finding — nor could there be one on the facts of this case, see note 5, *supra*, and related text — that the separate support proceeding was based on a claim that arose before the commencement of the case. We conclude that § 362(a)(1) did not prohibit the commencement of the plaintiff's separate support proceeding. See *Taylor* v. *First Fed. Sav. & Loan Assn.*, 843 F.2d 153, 154 (3d Cir. 1988) ("the automatic stay is not intended to bar proceedings for post-petition claims that could not have been commenced before the petition was filed"); *Holland America Ins. Co.* v. *Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985) ("the stay simply does not apply to post-bankruptcy events"); *Turner Bdcst. Sys., Inc.* v. *Sanyo Elec., Inc.*, 33 B.R. 996, 999-1000 (N.D. Ga. 1983) ("the plain language of the statute, the legislative history, the purposes for which the statute was enacted, and strong policy reasons all warrant the conclusion that section 362[a]'s automatic stay does not apply to a case commenced after a bankruptcy petition is filed"). Contrast *Grady* v. *A.H. Robins Co.*, 839 F.2d 198 (4th Cir. 1988) (when the acts constituting the claim occur prior to the petition the claim is barred by § 362[a][1]).

That the filing of the separate support complaint was permissible does not necessarily mean, however, that the recording of the lis pendens was permissible. As the court in *Turner Bdcst. Sys., Inc.* v. *Sanyo Elec., Inc.*, *supra*, pointed out at 1000-1001 n. 2, the automatic stay provisions of 11 U.S.C.

§ 362(a)(3) and (4), which we set out in the margin,[9] have the effect of precluding a postpetition creditor from attaching or executing on *property of the estate* without the Bankruptcy Court granting relief from the stay. See also *Bellini Imports, Ltd.* v. *The Mason and Dixon Lines,* 944 F.2d. 199, 201 (4th Cir. 1991) (relief from the automatic stay provisions of §§ 362[a][3] and [4] is required to satisfy a judgment against property of the bankruptcy estate on a postpetition claim).

We need not pause on the question whether the recording of a lis pendens is an act to "obtain possession of property" or an act to "enforce any lien against property" within the meaning of § 362(a)(3) and (4). See *In re Kodo Properties, Inc.,* 63 B.R. 588, 589 (E.D. N.Y. 1986) (lis pendens "does not of itself create an encumbrance upon the property"); see also, *Debral Realty, Inc.* v. *DiChiara,* 383 Mass. 559, 560-566 (1981) (lis pendens, when recorded, does no more than provide notice to those contemplating purchase of an interest in the property that a suit was pending that affected title to the property). Assuming (but not deciding) that it is, the lis pendens recorded in this case was nevertheless not prohibited by § 362(a)(3) or (4).

The automatic stay provisions of § 362(a)(3) and (4) are expressly limited to acts that affect property of the bankruptcy estate (note 9, *supra*) and not property of the debtor. This distinction between property of the estate and property of the debtor is critical to the statutory scheme: under § 362(a)(3) and (4), property of the estate is protected only

---

[9]Section 362 states, in pertinent part, as follows:

"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3), operates as a stay applicable to all entities, of . . .
* * *
(3) any act to obtain possession of property of the estate or of property from the estate . . . .
(4) any act to create, perfect, or enforce any lien against property of the estate . . . ."
* * *

so long as it remains property of the estate. See *In re Kodo Properties*, 63 B.R. at 590 n.1.

Title 11 U.S.C. § 1327(b) (1982) provides that, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate *in the debtor*" (emphasis added). As noted above, the confirmation of Jason's plan was entered January 7, 1986; the recording of the lis pendens did not occur until June 24, 1987. Moreover, there is nothing in the record before us which establishes that either the plan or the order confirming the plan preserved the locus as property of the bankruptcy estate. See note 4, *supra*. Thus, the lis pendens, recorded after confirmation of the plan, affected only Jason's property, not property of the bankruptcy estate, and subsections (3) and (4) have no application to the facts of this case. See *In re Bernstein*, 20 B.R. 595, 598 (1982) ("once a plan is confirmed . . . post-petition acquisitions are [no] longer properties of the estate . . . [and] are subject to the claim of a non-debtor spouse for the satisfaction of alimony and support obligations"); *In re Stark*, 8 B.R. 233, 234 (N.D. Ohio 1981) ("Because the Debtors' plan did not provide otherwise, all the property of the estate vested, upon confirmation, in the debtors"); *In re Adams*, 12 B.R. 540, 542 (1981) ("once confirmation occurs, a[n] . . . equitable balance is struck between the needs of the debtor to rehabilitate himself and those of his dependents seeking lawful support").

There is an additional reason for concluding that the recording of the lis pendens did not violate the automatic stay provisions. In *Carver* v. *Carver*, 954 F.2d. 1573 (11th Cir. 1992), the court held that the bankruptcy judge should have abstained from imposing sanctions against a wife, upon the application of her husband, for violations of an automatic stay order. The court observed that the Federal courts generally abstain from deciding diversity cases which involve family law;[10] the court added that "the concerns underlying this

---

[10]See, e.g., *Ankenbrandt* v. *Richards*, No. 89-4244 (E.D. La. Dec. 10, 1990), aff'd per curiam, 934 F.2d 1262 (5th Cir. 1991), cert. granted, 112 S. Ct. 855, rev'd, 112 S. Ct. 2206 (1992). See generally 13B Wright,

abstention doctrine are also present in bankruptcy. The state interest in ensuring that dependents are adequately provided for is certainly strong. Decisions which involve alimony or child support, generally under continuing supervision by the state courts, could require the bankruptcy court to second guess the state court on such matters and could produce conflicting court decrees further aggravating an already delicate situation. . . . 'It is appropriate for bankruptcy courts to avoid incursions into family law matters "out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters." ' " *Id.* at 1578-1579 (quoting from *In re Mac Donald*, 755 F.2d 715, 717-719 [9th Cir. 1985]).

Here, it is to be noted, the bankruptcy judge had before him both the mortgage and the lis pendens — the defendants pressing for foreclosure, and the wife seeking to establish her priority. The judge declined to act on either application, deferring instead to the Probate Court, as the second judge found.[11] Neither party then, or thereafter, claimed an appeal to the United States District Court from the order of the bankruptcy judge declining to rule on the issues. See 11 U.S.C. § 8001(a) and (b). The result was that the bankruptcy judge abstained from applying Federal bankruptcy law to the controversy before him, and the parties who were before him (who were the same parties before the second judge) accepted that abstention.

We must turn, then, to State law to determine the rights of the defendants. The defendants make several arguments designed to defeat the lis pendens and the ensuing judgment entered by the first judge ordering a transfer of the locus to the plaintiff. First, they argue that, not having received notice of the hearing before the first judge on June 5, 1988, they are entitled, as "strangers" to those proceedings, to at-

---

Miller, & Cooper, Federal Practice and Procedure §§ 3609 and 3610 (1984).

[11] The bankruptcy judge did not enter any written order of abstention; the finding by the second judge, that the bankruptcy judge had abstained, was based on testimony, admitted without objection in the Probate Court hearing, as to what the bankruptcy judge said in the Bankruptcy Court.

tack collaterally the admittedly erroneous judgment entered by the first judge ordering a conveyance of the locus.

The argument misconceives the effect of the recording of the lis pendens on June 24, 1987, of which the defendants had adequate notice.[12] Prior to G. L. c. 184, § 15, first appearing in St. 1877, c. 229, the mere pendency of litigation involving title to real estate was constructive notice to the world that "anyone who purchased the disputed property while the suit was pending was bound by the judgment ultimately to be rendered." *Debral Realty, Inc.* v. *DiChiara*, 383 Mass. at 560. The statute merely had the effect of making the judgment ultimately to be rendered binding on those subsequently acquiring an interest in the property, but only if the statutorily required memorandum of lis pendens had previously been filed.[13] The defendants, then, are bound by the judgment ultimately rendered in the suit described in the memorandum of lis pendens because the memorandum was recorded prior to the recording of the defendants' mortgage.[14]

The defendants also argue that the lis pendens was "void ab initio" because there was no finding by any judge that the separate support proceeding affected the title to, or the use and occupation of, the locus. See G. L. c. 184, § 15. The statute merely requires that the memorandum state the "the names of the litigants, the court in which the suit is pending,

---

[12]The fact that the lis pendens was recorded only in the Middlesex (and not Suffolk) registry of deeds was no less effective as notice to the defendants. More to the point is the fact that on November 19, 1987, eight months before judgment was entered in the separate support proceedings, counsel to the defendants wrote counsel to the plaintiff that because of the automatic stay provisions he should "forthwith record an appropriate document to release and discharge the lis pendens. . . ."

[13]Contrast the position of an attaching creditor who obtains a specific charge upon property for security of the debt for which suit has been brought, thus achieving the position of a purchaser for value. *Kahler* v. *Marshfield*, 347 Mass. 514, 516 (1964).

[14]As in *McDonnell* v. *Quirk*, 22 Mass. App. Ct. 126, 133 (1986), we perceive no reason why the defendants, or their predecessors in interest, having elected to record their mortgage, did not intervene in the separate support proceedings to protect their interest against an outcome unfavorable to them. See Mass.R.Dom.Rel.P. 24 (1975).

the date the suit was brought, and a description of the real property to be affected by the suit." *Debral Realty, Inc.* v. *DiChiara*, 383 Mass. at 561. The second paragraph of § 15 instructs the register of deeds and the assistant recorder of each district of the Land Court not to record a memorandum of lis pendens unless the finding is endorsed on the memorandum.

Here, the recorded memorandum included all the detailed information required by the statute (which we refer to above), together with a copy of the plaintiff's motion for a lis pendens which stated that the plaintiff claimed "an interest" in the locus. The motion included a stamp reciting its allowance by the first judge. The better practice would have been for the register to have insisted on the precise endorsement contemplated by the statute ("the subject matter of the action constitutes a claim of a right to title to real property or the use and occupation thereof"), but the inclusion of the required detailed information in the recorded memorandum was enough to validate the lis pendens, and put the defendants on notice of the pendency of litigation the results of which would be binding upon any later recorded mortgage or other interest in the locus.

The conclusion we reach here is consistent with our cases dealing with collateral attack on final judgments. In *Pavlik* v. *Dmytryck*, 6 Mass. App. Ct. 915, 916 (1978), we assumed, on facts similar to those here, that the judge exceeded his authority in ordering the transfer of the husband's property to the wife, and we held that the judgment was nevertheless binding on the parties and those in privity with them, but we indicated that the judgment was not binding on a "stranger" to the litigation whose interests were affected by the proceedings. See also *Boyd* v. *Jamaica Plain Coop. Bank*, 7 Mass. App. Ct. 153, 157-158 (1979) (the third party was "sufficiently identified" with a litigating party to warrant the application of issue preclusion); *Mongeau* v. *Boutelle*, 10 Mass. App. Ct. 246, 249-250 (1980) (there must be a "sufficient legal identity" between the third party and the prior litigant for the later claim to be precluded).

Here the defendants were the assignees and holders of the $77,000 mortgage from Jason, the original mortgagee[15] having taken with knowledge that Jason was the defendant in a lawsuit brought by the plaintiff in which she claimed an interest in the property. Instead of declining to advance the proceeds of the loan, the mortgagee elected to record the mortgage, close the transaction, and not to intervene in the separate support proceedings, see note 14 *supra*, thereby acquiescing in the defense of the lawsuit by Jason. See *Boyd* v. *Jamaica Plain Coop. Bank, supra* at 157. Having advanced funds with notice of the pending legal proceedings which might affect title to the locus, and having elected to acquiesce in Jason's control of the litigation, the defendants are bound by the judgment rendered.[16]

Finally, the defendants argue that enforcing the lis pendens will have the effect of unjustly enriching the plaintiff. We disagree. The defendants retain their claim against Jason for the entire unpaid balance of the debt, with interest. The loss of the security for that debt is only because the defendants failed to protect their interests either by declining to proceed with the mortgage transaction or by intervening in the separate support proceedings.

*Judgment affirmed.*

---

[15]See note 2, *supra*.

[16]The defendants concede in their brief that "[t]he only privity that exists between Jason Lombardo and the defendants is one based on contract law."