DEBRA L. HELLER & others[1] vs. TURNER BROTHERS
CONSTRUCTION, INC.

No. 94-P-1302.

Suffolk. November 10, 1995. - April 30, 1996.

Present: PORADA, IRELAND, & GREENBERG, JJ.

*Lis Pendens. Real Property,* Attachment, Condominium.

A lis pendens recorded by a purchaser with respect to a single condomin-
ium unit had priority over a subsequent attachment of the condominium
property by a creditor of the condominium trustee. [365-366]

CIVIL ACTION commenced in the Land Court Department
on April 10, 1992.

The case was heard by *Peter W. Kilborn,* J., on motions for
summary judgment.

*James P. Hayes* for the defendant.
*Lawrence P. Heffernan* for the plaintiffs.

GREENBERG, J. The subject of this complaint for injunc-
tive and declaratory relief is unit 61 of the Edgewood condo-
minium located in Mansfield; the owners of record are the
plaintiffs Debra L. Heller and Robin Heller, her husband.
The defendant, Turner Brothers Construction, Inc. (Turner
Brothers), built the entire condominium complex under
contract with the developer, Malcolm Post, trustee of Mans-
field Associates Realty Trust.

In 1986, when Debra Heller (then Debra Spiegelglass)
learned that the developer refused to convey the unit to her
as required by her "reservation agreement," she filed a com-
plaint for specific performance in the Superior Court. Because
"the subject matter of the action constitute[d] a claim of a
right to title to real property or the use and occupation thereof
or the buildings thereon," see G. L. c. 184, § 15, second par.,

---

[1]Robin A. Heller and Home Savings of America, F.A.

as inserted by St. 1985, c. 809,[2] a Superior Court judge allowed her to record a memorandum of lis pendens against Post, as trustee. See *Sutherland* v. *Aolean Dev. Corp.*, 399 Mass. 36 (1987). On May 6, 1986, Debra Heller recorded the court-endorsed lis pendens in the Bristol County North registry of deeds.

In December, 1986, Turner Brothers filed suit against the trustee for payment of the monies due on the construction contract. Turner Brothers obtained and recorded an attachment against Post, as trustee of Mansfield Associates Realty Trust, on December 14, 1987, about a year and one-half after the lis pendens had been recorded.

Eventually, Debra Heller settled her specific performance action with the trustee and filed a notice of voluntary dismissal on May 13, 1988. As part of the settlement, the trustee conveyed unit 61 to the Hellers for $80,000. The Hellers financed the purchase, in part, through a loan from plaintiff Homes Savings of America, F.A., that was secured by a mortgage on the property.

Over three years later, on September 11, 1991, Turner Brothers, after obtaining a judgment of $351,728.99 against the trustee, levied on its execution in that amount. This action had the effect of jeopardizing the Hellers' interest in unit 61 and in the related mortgage financing.

The plaintiffs commenced the present action against Turner Brothers in the Land Court to enjoin the ensuing sheriff's sale of the unit. Cross motions for summary judgment were filed upon an agreed statement of facts. The judge concluded that the Hellers held the property free of the claims of Turner Brothers. We affirm.

---

[2]The first paragraph of § 15, as amended by St. 1941, c. 88, reads:

"A writ of entry or other proceeding, either at law or in equity, which affects the title to real property or the use and occupation thereof or the buildings thereon, shall not have any effect except against the parties thereto, their heirs and devisees and persons having actual notice thereof, until a memorandum containing the names of the parties to such proceeding, the court in which it is pending, the date of the writ or other commencement thereof, the name of the town where the real property liable to be affected thereby lies and a description of such real property sufficiently accurate for identification is recorded in the registry of deeds for the county or district where such real property lies; but this section shall not apply to attachments, levies of execution or proceedings, other than proceedings under equity jurisdiction, in the probate courts."

Turner Brothers contends that our decision in *True* v. *Wisniowski*, 13 Mass. App. Ct. 501, 502 (1982), controls the outcome here. In that case, a wife who had obtained a judgment of divorce ordering her husband to convey his interest in certain real estate to her failed to record the judgment until after a creditor had attached the husband's interest. We held that the interest that the creditor had acquired was not deflated by the judgment of divorce. We stated that the wife's equitable rights, under G. L. c. 208, § 34A, were subject to her recordation of a lis pendens notice. *Id.* at 503. As the recording of the judgment nisi occurred after the defendant's attachment, we reasoned that the interests of the creditor had priority. Turner Brothers' reliance on this case is misplaced. There is no suggestion in the record before us that Turner Brothers' attachment preceded the Hellers' recorded lis pendens.

In the alternative, Turner Brothers argues that a lis pendens is not a lien until it ripens into a judgment. Since there never was any judgment rendered in the Hellers' favor, so the argument goes, the defendant is not bound.[3] The argument is fundamentally flawed. Contrary to Turner Brothers' argument, nothing in the language of G. L. c. 184, § 15, requires a lis pendens filer to reduce the underlying claim to judgment to have the benefit of the statute. "Although a notice of pending litigation is not strictly speaking a lien on property, the practical effect of recording it is to prevent a sale or transfer until the conclusion of a suit." Eno & Hovey, Real Estate Law § 11.19 (3d ed. 1994). See *McDonnell* v. *Quirk*, 22 Mass. App. Ct. 126, 133 (1986). Nothing in *Lombardo* v. *Gerard*, 32 Mass. App. Ct. 589, 595 (1992), a case upon which Turner Brothers rely, contradicts that proposition. "Since a lis pendens is only a notice or warning to the world, it cannot strictly speaking, be discharged." Eno & Hovey, *supra* at § 11.19. The only way Turner Brothers could have been assured that the recorded lis pendens would not have priority over its attachment was by procuring a certificate from the

---

[3]Although we reject Turner Brothers' argument on other grounds, we should note that the judge found that the voluntary dismissal of the specific performance action was incorporated into a final judgment on May 19, 1988, over three years before Turner Brothers' levy on execution. This must be taken to be a final decision on the merits. See *Dunn* v. *McSweeney*, 338 Mass. 270, 272 (1959).

clerk of court that there had been a final disposition in that case. See G. L. c. 184, § 16; Massachusetts Conveyancers Association Title Standard No. 29 (1978). That was not how events unfolded here.

The purpose of § 15, as explained in *Debral Realty, Inc.* v. *DiChiara*, 383 Mass. 559 (1981), was to ameliorate the potential "harsh effects" of the common law doctrine which deemed the mere existence of litigation involving title to real property to constitute notice to the world of that litigation. "Under the statute, the judgment of the court in litigation affecting real property is no longer binding on those acquiring an interest in the property unless a memorandum of lis pendens was filed in the registry of deeds before the acquisition. . . ." *Id.* at 561. The recording of a memorandum of lis pendens gives notice that the substantive rights of those with an interest in the property are affected. Once so notified, "a prospective third-party transferee can, with the exercise of reasonable prudence, acquire information relevant to a decision whether to consummate the transaction." *Id.* at 562. In similar fashion, a creditor, alerted to the pending litigation, can take steps, if possible, to seek additional security for a debt.

*Judgment affirmed.*