Harwich Beach, LLC (Harwich Beach), appeals from the entry of a judgment in favor of Plunkett Winston, LLC (Plunkett), on cross motions for summary judgment. We affirm.
Background. This case involves the effect of a lis pendens from an earlier Land Court action, as it impacts the judgment now on appeal from the Superior Court.
The Superior Court judge made findings based on undisputed facts. Plunkett and Harwich Beach own abutting beach properties in Harwich, Massachusetts. Plunkett owns the property at 4 Braddock Street (the Braddock Street property). Harwich Beach is the owner of 16 Bank Street (the Bank Street property).
In November, 2006, a dispute arose between the then-owners of the two properties. Plunkett's predecessor[2] filed a verified complaint against Harwich Beach's predecessor (the Lancasters) in the Land Court. On November 28, 2006, the Land Court, pursuant to G. L. c. 184, § 15, approved a memorandum of lis pendens, which was recorded in the Barnstable County registry of deeds the following day. In the lis pendens, the dispute was described as follows:
"This lawsuit concerns the rights, title, and interest of the parties to the land at and near the boundary of the Plunkett Winston Property, with the Lancaster Property and, in particular, that portion of the boundary which is the western boundary of Lot 3 shown on the 1955 Plan and the determination, by the court, of the course and length of the extension of the western boundary of Lot 3 to meet the current water line of the Nantucket Sound."
In March, 2007, the Lancasters, the defendants in the then-pending Land Court action, conveyed their interest in the property to Equity Holdings, LLC, and Cape Cod Investment and Real Estate Services, LLC (collectively, Equity). Contemporaneously, Equity granted a mortgage to South Shore Co-Operative Bank (S-Bank), with the subject property as security for a loan. In May, 2007, Equity was made a party-defendant in the pending Land Court action in place of the original defendants. S-Bank was not made a party, and did not intervene in the litigation.
In January, 2008, the Land Court action settled through mediation. The parties in that case, Plunkett's predecessor and Equity, consequently executed "for themselves and their successors in title" a "Boundary Line Agreement" (boundary agreement), setting forth an agreed common boundary line, which was further represented upon a referenced plan drawn by surveyors at the parties' behest. Pursuant to the boundary agreement, Equity conveyed a quitclaim deed to Plunkett's predecessor in title, which in turn conveyed a quitclaim deed to Equity. Both the boundary agreement and the surveyor's plan were recorded at the Barnstable County registry of deeds in January, 2008.
Nearly three years later, in November, 2010, S-Bank foreclosed on the Equity mortgage on the Bank Street property. S-Bank conveyed the Bank Street property to Harwich Beach pursuant to a foreclosure deed that same month, and recorded the deed in December, 2010.
In October, 2014, Harwich Beach recorded a new plan at the Barnstable County registry of deeds that substantially conflicts with the boundary agreement. Harwich Beach claims to own much of the property assigned and quitclaimed to Plunkett's predecessor in title, and has entered upon beach land assigned to Plunkett's predecessor in resolving the earlier Land Court dispute.
Plunkett filed this action against Harwich Beach in Superior Court. In ruling on cross motions for summary judgment, the judge found in Plunkett's favor, declaring that, notwithstanding Harwich Beach's recording of its 2014 plan, the property line remained as defined in the boundary agreement. The judge found that Harwich Beach had committed a trespass on Plunkett's land, and enjoined Harwich Beach from further trespass on the property as defined in the boundary agreement.
Discussion. Harwich Beach contends that it owns record title to the disputed property free and clear of the boundary agreement. It argues that the agreement was not binding on a nonparty, S-Bank, and that, in order for the agreement to be effective as of the date the memorandum of lis pendens was recorded, it would have been necessary to incorporate the boundary agreement into a judgment in the Land Court dispute or otherwise obtain the Land Court's endorsement of the boundary agreement. We disagree.
"The [Superior Court] judge decided the case on cross motions for summary judgment; therefore, we give no deference to [his] decision and review the order de novo." Benson v. Commonwealth, 85 Mass. App. Ct. 909, 910 (2014). We take the evidence viewed in the light most favorable to the party against whom judgment entered, here, Harwich Beach. Albahari v. Zoning Bd. of Appeals of Brewster, 76 Mass. App. Ct. 245, 248 n.4 (2010).
1. The lis pendens. A memorandum of lis pendens issued pursuant to G. L. c. 184, § 15, provides notice of pending litigation involving the property. Debral Realty, Inc. v. DiChiara, 383 Mass. 559, 560-561 (1981). Once notified, "a prospective third-party transferee can, with the exercise of reasonable prudence, acquire information relevant to a decision whether to consummate the transaction." Id. at 562. A lis pendens also "temporarily restricts the power of a landowner to ... convey clear title while the litigation is pending." Id. at 564. "[T]he existence of a lis pendens notice interferes with the owner's ability to obtain financing on the property," including an impairment of mortgageability. Ibid.
Harwich Beach argues, in essence, that the boundary agreement is unenforceable against S-Bank, a nonparty to the Land Court dispute, and therefore the boundary agreement is unenforceable against Harwich Beach as successor owner.
It is not disputed that Massachusetts is a title theory State. However, the sequence of events in this case is significant. Equity granted S-Bank a mortgage, with the property as security, in March, 2007. Before that mortgage was executed, the Land Court had approved a memorandum of lis pendens regarding the same property in November, 2006, and the lis pendens was recorded later that same month. Equity was therefore unable to convey clear title as a mortgagor to S-Bank in 2007. See Debral, 383 Mass. at 564. When S-Bank received title as the mortgagee, it was on notice of the pending litigation that could impact the property. See id. at 561-562. Therefore, although S-Bank was not a party in the Land Court proceedings, it was nonetheless constrained by the result, as is Harwich Beach now.
2. Binding effect of the boundary agreement. Harwich Beach further argues that the boundary agreement is not binding as of the date of the lis pendens because the Land Court did not approve or endorse the agreement.
As noted by the Superior Court judge, this case is analogous to Heller v. Turner Bros. Constr., Inc., 40 Mass. App. Ct. 363 (1996). In that case, Heller filed suit in Superior Court against a condominium developer and recorded a memorandum of lis pendens in the registry of deeds. Id. at 363-364. A construction company, Turner Brothers Construction, Inc. (Turner Brothers), filed suit against the developer for monies due on the construction contract. Id. at 364. The suit between Heller and the developer was later settled and the parties filed a notice of voluntary dismissal. When Turner Brothers later obtained a judgment against the developer, that judgment jeopardized Heller's settlement and Heller commenced action against Turner Brothers. Ibid.
In Heller, this court rejected Turner Brothers' argument that "a lis pendens is not a lien until it ripens into a judgment," and concluded that it was sufficient that Heller had settled the underlying action that was the subject of the lis pendens. Id. at 365. "Contrary to [the] argument, nothing in the language of G. L. c. 184, § 15, requires a lis pendens filer to reduce the underlying claim to judgment to have the benefit of the statute." Ibid.[3]
Harwich Beach attempts to distinguish Heller by arguing that the boundary agreement is unenforceable because the action here concerned the title to the property, not a lien as in Heller, and the lis pendens here stated that the parties sought a determination "by the court." It argues that the language in the lis pendens provided that the boundary agreement needed approval pursuant to Rule 10 of the Rules of the Land Court (2005), and that under this rule, in order for the boundary agreement to be effective as of the date the lis pendens was recorded, the agreement had to be approved or endorsed by the Land Court.
At its core, this is the same argument that we declined to follow in Heller. Rule 10 provides the process for the Land Court to approve an agreement for judgment.[4] While an agreement will not constitute a judgment of the court unless approved pursuant to rule 10, the rule itself does not require that an agreement be approved by the court to be binding. See rule 10. Because a lis pendens need not be reduced to judgment, see Heller, 40 Mass. App. Ct. at 365, the boundary agreement was binding on S-Bank and therefore its successor, Harwich Beach.
Judgment affirmed.

During the initial Land Court action, the Plunkett Winston Partnership owned the Braddock Street property. In November, 2008, the partnership deeded the property to Plunkett Winston, LLC.

In Heller, we noted that the voluntary dismissal of the action between Heller and the developer was incorporated into a final judgment. However, this was not determinative. Heller, 40 Mass. App. Ct. at 365 n.3.

Rule 10 provides, in pertinent part:
"A written agreement for judgment ... shall be accepted by the recorder for filing, and upon filing shall constitute the judgment of the court for all purposes .... Any other agreement for judgment (including, without limitation, those for declaratory or injunctive relief, [or] requiring the parties to enter into agreements or perform any acts ...) whether or not accepted for filing by the recorder, shall not constitute the judgment of the court unless and until the court ... endorses or otherwise approves the agreement for judgment."