NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-171                                            Appeals Court

CITY OF BEVERLY  vs.  BASS RIVER GOLF MANAGEMENT, INC.,
                    & another.[1]


No. 15-P-171.

Essex.     November 14, 2016. - January 5, 2018.

Present:  Sullivan, Maldonado, & Neyman, JJ.


Contract, Municipality, Performance and breach.  Municipal
    Corporations, Contracts.  Consumer Protection Act, Trade or
    commerce, Unfair or deceptive act.  Bankruptcy, Stay of
    other proceedings.  Practice, Civil, Directed verdict,
    Amendment, New trial, Instructions to jury.  Judgment,
    Amendment.



    Civil action commenced in the Superior Court Department on
March 11, 2011.

    The case was tried before Robert A. Cornetta, J., and a
motion to alter or amend the judgment, or for a new trial, was
heard by him.


    Denis J. Sullivan for the defendants.
    Eitan Y. Goldberg, Assistant City Solicitor (Stephanie M.
Williams, City Solicitor, also present) for the plaintiff.

---

[1] 31 Tozer Road, L.L.C.

MALDONADO, J.  In this case, we consider the propriety of actions taken by the city of Beverly (city), which owns the Beverly Golf and Tennis Club (Golf Club), and by Bass River Golf Management, Inc. (Bass River), which operated the facility for almost two years pursuant to a management contract with the city.  On March 11, 2011, the city commenced an action in the Superior Court against Bass River and 31 Tozer Road, L.L.C. (Tozer), the guarantor of Bass River's payment obligations to the city, asserting claims for breach of contract against each party and seeking damages.  Bass River filed counterclaims against the city (subsequently amended) which alleged violations of G. L. c. 93A, breach of contract, breach of an implied covenant of good faith and fair dealing, breach of warranty, and conversion.

Following a trial, the jury, in response to special questions, found that Bass River had breached its management contract with the city, that Tozer had guaranteed Bass River's payment obligations, and that the city was entitled to damages of $631,969.63.  The jury also found that the city had violated the covenant of good faith and fair dealing in its contractual relationship with Bass River, and that the city had converted Bass River's property.  The jury awarded Bass River damages of $48,967.33.  Thereafter, the judge determined that Bass River had not proved that the city violated G. L. c. 93A.

Bass River and Tozer filed a motion to amend the findings of facts and rulings of law, to amend the judgment, or, in the alternative, for a new trial. The judge amended the judgment against Tozer to $600,000, in conformity with the language of the guaranty. In all other respects, the motion was denied. An amended final judgment entered on October 3, 2014, adding interest accrued on the damages awarded by the jury, limiting the judgment against Tozer as guarantor, and dismissing the parties' remaining claims and counterclaims. Bass River and Tozer appealed, contending that the judge erred in (1) denying their motion for a directed verdict; (2) denying their motion to amend the judgment or for a new trial; (3) refusing to give, or improperly giving, particular jury instructions; and (4) dismissing the counterclaim alleging violations of G. L. c. 93A.

1. Background. The jury could have found the following facts. As of January 1, 2005, the city entered into a five-year management contract with Johnson Golf Management, Inc. (Johnson Golf), whereby Johnson Golf agreed to manage, control, and operate the Golf Club, and to collect related fees from permit holders, in exchange for paying the city $600,000 annually, plus certain other fees. At the sole option of the city, the contract could be extended for an additional five-year term.

The management contract provided that the city would keep the Golf Club compliant with all Federal, State, and local laws,

rules, and regulations. Johnson Golf was solely responsible for maintaining and repairing the buildings and the grounds, including the golf course and the interior of the clubhouse,[2] in keeping with their existing condition. The city was solely responsible for maintaining, repairing, and rebuilding the structural components of the buildings, including the walls, floors, roofs, and exterior facades. All work necessary to protect lives, safety, and the structural integrity of the buildings was to be performed first, after a review of two reports prepared by Gale Associates, Inc. (Gale reports), an engineering and design firm retained by the city to help it develop a facility maintenance plan and budget. Thereafter, the city would determine the order of its maintenance, repair, and rebuilding projects.

Over time, the relationship between Johnson Golf and the city deteriorated. On April 3, 2008, Johnson Golf agreed to assign its rights, interests, and obligations under the management contract to Bass River for $620,750, plus $50,500 for certain equipment, tools, and fixtures. Manuel Barros was the sole owner of Bass River. Prior to entering into the assignment, he toured the Golf Club and was familiar with the

---

[2] Because the clubhouse was on the State register of historic places, all interior maintenance had to be done in accordance with the rules and regulations of the Massachusetts Historical Commission.

condition of its clubhouse, including the fact that the second floor, where a large function room was located, was not accessible to persons with disabilities.

To induce the city to execute the assignment with Bass River, Tozer provided a written guaranty to the city. It unconditionally guaranteed full and punctual payment "of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to the City from Bass River." Among other matters, Tozer also agreed that its liability was "the lesser of $600,000.00 or such sums as may, from time to time, be due to the City by Bass River under the Management Contract." The guaranty was signed by Barros, as manager of Tozer.

Once Bass River started operating the Golf Club, it made numerous improvements to the facility in an effort to increase the number of permit holders. In September, 2008, the city's mayor sought, and the city council approved, a $1.5 million bond to pay for capital improvements to the golf course, the clubhouse, and a maintenance building that needed environmental remediation. Architectural and engineering work was initiated, and repairs were undertaken. During the time that Bass River was managing the Golf Club, the city spent approximately $130,000 on various repairs and improvements.

By late 2009, Bass River had fallen significantly behind in its payments to the city under the management contract, by then owing the city over $600,000.  The mayor decided not to extend the contract with Bass River for an additional five-year term, choosing instead to hire a new manager for the Golf Club.[3]  When Bass River failed to pay its arrearage, the present action ensued.

2.  Suggestion of bankruptcy.  On November 10, 2016, Tozer filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code.  Tozer then filed a suggestion of bankruptcy with this court, requesting that the present appeal be stayed.[4]  We ordered the parties to submit supplemental briefs addressing the matter.  In their supplemental briefs, both parties contend that this appeal should be stayed as to Tozer, but not as to Bass River.  We agree.

The filing of a voluntary bankruptcy petition operates as an automatic stay of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before

---

[3] During the tenure of the new manager, lifts were installed in the clubhouse to facilitate access to the second floor by persons with disabilities.

[4] By agreement dated November 10, 2016, the city sold, assigned, and transferred all of its claims and interests against Tozer to Bass River Tennis Corporation for $375,000.

the commencement of the [bankruptcy] case."[5]  11 U.S.C.
§ 362(a)(1) (2012).  Section 362 "should be read to stay all
appeals in proceedings that were originally brought against the
debtor, regardless of whether the debtor is the appellant or
appellee."  Association of St. Croix Condominium Owners v. St.
Croix Hotel Corp., 682 F.2d 446, 449 (3d Cir. 1982).  The
purpose of the automatic stay is "to relieve a debtor of
collection proceedings which would nullify the Bankruptcy Code's
objective of orderly liquidations or reorganizations which treat
creditors equally."  Marine Midland Bank v. Herriott, 10 Mass.
App. Ct. 743, 746 (1980).  It is well settled that "proceedings
in violation of the stay are void."  Amonte v. Amonte, 17 Mass.
App. Ct. 621, 624 (1984).

The automatic stay provisions of the Bankruptcy Code only
apply to a "proceeding against the [petitioning] debtor," not
against others.  11 U.S.C. § 362(a)(1).  See In re Two Appeals
Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation,
994 F.2d 956, 969 (1st Cir. 1993).  "Thus the stay provisions
have been held not to apply to proceedings against a codefendant
of the debtor, . . . against individual partners of the debtor,
. . . or against the guarantors of its debts."  Allegheny Intl.

---

[5] We have concurrent jurisdiction with the Bankruptcy Court
to determine the applicability of the automatic stay provisions
of the Bankruptcy Code.  See Lombardo v. Gerard, 32 Mass. App.
Ct. 589, 593-594 (1992).

Credit Corp. v. Bio-Energy of Lincoln, Inc., 21 Mass. App. Ct. 155, 158 (1985). See In re Furlong, 660 F.3d 81, 89-90 (1st Cir. 2011) (automatic stay does not extend to assets of corporation in which debtor has interest, even where interest is 100 percent of stock).

The present appeal is a continuation of the judicial action against Bass River and Tozer that was commenced by the city prior to Tozer's initiation of bankruptcy proceedings. The parties assert, and we agree, that none of the exceptions to the automatic stay provisions, set forth in 11 U.S.C. § 362(b)(1)-(28) (2012), is applicable in this case. We also agree with the parties that, because the automatic stay provisions of the Bankruptcy Code only apply to Tozer, Bass River's appeal should proceed. Tozer's appeal is hereby stayed, and we turn to the merits of Bass River's arguments.

3. Motion for directed verdict. Bass River contends that the judge erred in denying its motion for a directed verdict at the close of the city's evidence. Bass River argues that the city failed to show that it satisfied its obligation under the management contract to ensure that the Golf Club was in compliance with all Federal, State, and local laws, rules, and regulations, particularly the regulations of the Architectural Access Board (AAB), which are designed to make public buildings accessible to and safe for persons with disabilities. See 521

Code Mass. Regs. § 2.1 (2006). Given that the second floor of the clubhouse was only accessible by stairs during Bass River's tenure as manager of the Golf Club, Bass River claims that the city was in material breach of the management contract which, in turn, excused Bass River's performance under the contract. Therefore, Bass River asserts, the judge should have granted its motion for a directed verdict with respect to the city's breach of contract claim. We disagree.

An appellate court reviews the denial of a motion for a directed verdict under the same standard applied by the trial judge. See O'Brien v. Pearson, 449 Mass. 377, 383 (2007). We must "construe the evidence in the light most favorable to the nonmoving party and disregard that favorable to the moving party." Ibid. "Our duty in this regard is to evaluate whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of the [nonmovant].'" Ibid., quoting from Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 121 (1992). A motion for a directed verdict made at the close of the plaintiff's case will not survive if the defendant does not renew its motion at the close of all of the evidence. See Martin v. Hall, 369 Mass. 882, 884 (1976); King v. G & M Realty Corp., 373 Mass. 658, 659 n.3 (1977).

As a preliminary matter, the city argues that Bass River has waived its right to seek appellate review of the denial of its motion for a directed verdict because it did not renew such motion at the close of all the evidence. We agree. Notwithstanding the fact that several relevant portions of the transcript are largely inaudible, there is nothing to suggest that Bass River renewed its motion for a directed verdict at the conclusion of the presentation of its own evidence, or that it attempted to reconstruct the transcript to reflect the fact that this motion had been made.[6] By failing to take such action, Bass River waived its right to appeal from the denial of its motion. See Dalrymple v. Winthrop, 50 Mass. App. Ct. 611, 619 (2000).

Even if that were not the case, we are satisfied that the city presented sufficient evidence from which the jury could reasonably conclude that Bass River breached the management contract. See Singarella v. Boston, 342 Mass. 385, 387 (1961) (articulating essential elements of breach of contract claim). As pertinent here, the jury could have found that, by late 2009, Bass River had not made all of its required payments under the contract, owing the city over $600,000. The jury also could have found that Bass River's failure to pay was not excused by an alleged material breach of the management contract by the

---

[6] In its reply brief, Bass River does not address this waiver issue.

city, namely, its noncompliance with AAB regulations. See Coviello v. Richardson, 76 Mass. App. Ct. 603, 609 (2010) (material breach of contract by one party excuses performance by other party as matter of law, but whether material breach has occurred is question of fact).

Construing the evidence in the light most favorable to the city, the jury could have determined that the city did not materially breach the management contract.[7] The jury could have found that, prior to entering into the assignment, Bass River was aware of the accessibility issue regarding the second floor of the clubhouse, and had been told by the city's finance director that the city did not have the monetary resources to undertake construction work to provide accessibility for persons with disabilities, but that the city would and did provide a mechanical device for transporting disabled persons to the second floor until completion of all repairs mandated by the management contract. The jury also could have found that the management contract did not specify a time frame for the completion of improvements to the Golf Club, and that the contract authorized the city to determine "the order of

---

[7] In his final charge, the judge instructed the jury that Bass River "may be excused from making payments to the City if the City was in material breach of the [parties'] contract," and that "[a] material breach of an agreement occurs when there is a breach of an essential and inducing feature of the contract." See Lease-It, Inc. v. Massachusetts Port Authy., 33 Mass. App. Ct. 391, 396-397 (1992).

maintenance, repair, and rebuilding of the structural components of all buildings."

In addition, the jury could have found that there was insufficient evidence to support Bass River's claim that it suffered financial harm as a consequence of the accessibility issue. Finally, the jury could have found that, during Bass River's tenure as manager, it never filed any complaints with the AAB alleging that the city, as owner of the Golf Club, had failed to comply with the regulations governing accessibility for persons with disabilities. See 521 Code Mass. Regs. § 2.3.1 (2006). Bass River filed a complaint only after the city declined to renew its management contract for an additional five-year term. We conclude, therefore, that the judge did not err in denying Bass River's motion for a directed verdict with respect to the city's breach of contract claim.[8]

4. Motion to amend the judgment or for a new trial. Bass River argues that the judge erred in denying its motion to amend the judgment, or, in the alternative, for a new trial. In Bass River's view, the jury's verdict in favor of the city on its breach of contract claim was against the weight of the evidence,

---

[8] In reaching this decision, we do not intend to minimize the importance of compliance with AAB regulations but, rather, confine ourselves to the sole issue whether Bass River can escape liability on the basis of the city's noncompliance with those regulations, where it was fully aware of the city's noncompliance when it contracted with the city.

and therefore, judgment should have entered for Bass River. Alternatively, Bass River contends that the judge erred in denying its motion for a new trial because the verdict for the city suggested that the jury misunderstood the principle of contract law that a material breach by one party excuses performance by the other party.

A trial judge should set aside a jury verdict in a civil case only if the judge concludes that "the verdict is so markedly against the weight of the evidence as to suggest that the jurors allowed themselves to be misled, were swept away by bias or prejudice, or for a combination of reasons, including misunderstanding of applicable law, failed to come to a reasonable conclusion." W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 748 (1993). This determination rests in the sound discretion of the judge. See ibid. We give considerable deference to the rulings of a motion judge who also served as the trial judge in a case. See Gath v. M/A-Com, Inc., 440 Mass. 482, 492 (2003).

Here, we conclude that the judge did not abuse his discretion in denying Bass River's motion to amend the judgment or for a new trial. As previously discussed, the jury reasonably could have found that the city did not materially breach the management contract such that Bass River, in turn, was excused from satisfying its payment obligations. The judge

properly determined that the jury's verdict was not against the weight of the evidence and did not suggest a misapprehension of contract law principles.

5. Jury instructions. Bass River contends that the judge erred in two respects with regard to his jury instructions, thereby causing prejudice. First, Bass River argues that, over its objection, the judge refused to instruct the jury that Bass River could recover out-of-pocket losses incurred as a consequence of its reliance on the city's representations that the clubhouse would be made accessible to persons with disabilities. Second, Bass River argues that, over its objection, the judge improperly instructed the jury that if they found that the city had conferred a benefit on Bass River under the management contract, then the city was entitled to reimbursement for such benefit, irrespective of any breach of the contract by the city. Given these purported instructional errors, Bass River claims that it was entitled to a new trial on its counterclaims against the city. We disagree.

"A judge should instruct the jury fairly, clearly, adequately, and correctly concerning principles that ought to guide and control their action." Selmark Assocs., Inc. v. Ehrlich, 467 Mass. 525, 547 (2014), quoting from Mahoney v. Gooch, 246 Mass. 567, 571 (1923). "We review objections to jury instructions to determine if there was any error, and, if so,

whether the error affected the substantial rights of the objecting party." Hopkins v. Medeiros, 48 Mass. App. Ct. 600, 611 (2000). "An error in jury instructions is not grounds for setting aside a verdict unless the error was prejudicial -- that is, unless the result might have differed absent the error." Blackstone v. Cashman, 448 Mass. 255, 270 (2007). A trial judge has broad discretion in framing the language that is used in jury instructions. See Kiely v. Teradyne, Inc., 85 Mass. App. Ct. 431, 441 (2014). An appellate court must review the charge as a whole "to determine whether it is a clear and accurate statement of the law." Wilson v. Boston Redev. Authy., 366 Mass. 588, 591 (1975).

Contrary to Bass River's argument that the judge failed to instruct the jury on damages for out-of-pocket losses, the judge did, in fact, instruct on compensatory damages.[9] This instruction apprised the jury that where one party was found to have engaged in wrongful conduct, the other party was entitled to recover all the damages that it had suffered, thereby restoring the status quo, as if the transaction had never occurred. Cf. VMark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610, 619 (1994). We see no error.

---

[9] The judge instructed the jury, in part, as follows: "The purpose of the law in awarding damages is to compensate an injured party for the loss incurred because of another's breach of conduct. The object is to try to restore the party to the position that it would have been in had the wrong not occurred."

With regard to the judge's instruction that the city was entitled to reimbursement for benefits conferred on Bass River, irrespective of any breach of the management contract by the city, we must view this statement in the context of the instruction as a whole.  The judge properly instructed the jury that if they found that the city was in material breach of the contract, then they could determine that Bass River was excused from making payments to the city.  See Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass. App. Ct. 599, 610 (2003).  The judge also properly instructed the jury that, absent a material breach by the city, the jury could award the city damages for payments owed by Bass River under the contract.  The judge's subsequent instruction that, "[i]n either case" (emphasis added), if the jury found that the city had conferred a benefit on Bass River, then the city was entitled to reimbursement for the value of such benefit conferred, was erroneous to the extent that the jury determined that the city had materially breached the management contract.  Here, however, the jury made no such determination, finding instead that the city did not breach the contract.  Accordingly, we conclude that, even if this one statement by the judge was erroneous, Bass River was not prejudiced.

6.  Counterclaim under G. L. c. 93A.  Finally, Bass River argues that the judge erred in dismissing its counterclaim

pursuant to G. L. c. 93A, § 11.  In Bass River's view, the judge incorrectly determined that the city was not engaged in "trade or commerce" when dealing with Bass River and, further, that even if the city was so engaged, the city's conduct was not unfair or deceptive within the meaning of the statute.

When reviewing the judge's decision, we accept his findings of fact unless they are clearly erroneous, and we consider his conclusions of law de novo.  See Anastos v. Sable, 443 Mass. 146, 149 (2004).  "A ruling that conduct violates G. L. c. 93A is a legal, not a factual, determination."  R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 435 Mass. 66, 73 (2001).

General Laws c. 93A is designed "to encourage more equitable behavior in the marketplace . . . [and to impose] liability on persons seeking to profit from unfair practices."  Poznik v. Massachusetts Med. Professional Ins. Assn., 417 Mass. 48, 53 (1994).  Whether a claim under c. 93A can be brought against a municipality is an unresolved issue.  See Park Drive Towing, Inc. v. Revere, 442 Mass. 80, 86 (2004) (Park Drive Towing); M. O'Connor Contracting, Inc. v. Brockton, 61 Mass. App. Ct. 278, 284 n.8 (2004).  Nonetheless, it is settled that "a municipality is not liable under G. L. c. 93A when it is not 'acting in a business context,' that is, when it is not engaged in 'trade or commerce.'"  Park Drive Towing, supra, quoting from All Seasons Servs., Inc. v. Commissioner of Health & Hosps. of

Boston, 416 Mass. 269, 271 (1993). "Whether a municipality is acting in a business context depends on 'the nature of the transaction, the character of the parties involved and [their] activities . . . and whether the transaction [was] motivated by business . . . reasons.'" Park Drive Towing, supra, quoting from Boston Hous. Authy. v. Howard, 427 Mass. 537, 538 (1998). Courts also consider whether a municipality's actions are incidental to a primary governmental function, and whether the municipality seeks to profit from its actions. See Peabody N.E., Inc. v. Marshfield, 426 Mass. 436, 439-440 (1998); Lafayette Place Assocs. v. Boston Redev. Authy., 427 Mass. 509, 535-536 (1998), cert. denied, 525 U.S. 1177 (1999).

We need not resolve the issue of whether the city was acting in a business context for purposes of G. L. c. 93A by owning the Golf Club, overseeing its management by Bass River, and collecting annual fees. Even if we were to decide that the city was engaged in trade or commerce, we nonetheless conclude that, in this case, the city's dealings with Bass River did not constitute unfair or deceptive acts under the statute as a matter of law.

To prevail on its c. 93A claim, Bass River was required to show that the city engaged in "[u]nfair methods of competition" or "unfair or deceptive acts or practices." G. L. c. 93A, § 2, as amended by St. 1978, c. 459, § 2. When considering whether

an act or practice is unfair, we assess "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other business[people])."  PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975), quoting from 29 Fed. Reg. 8325, 8355 (1964).  Practices may be deemed deceptive where they "could reasonably be found to have caused a person to act differently from the way he otherwise would have acted."  Lowell Gas Co. v. Attorney Gen., 377 Mass. 37, 51 (1979).  Conduct is deceptive when it tends to mislead.  See Aspinall v. Philip Morris Cos., 442 Mass. 381, 396 (2004).

Appellate courts have consistently held that a mere breach of contract, without more, does not amount to a violation of G. L. c. 93A.  See Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-101 (1979); Madan v. Royal Indem. Co., 26 Mass. App. Ct. 756, 762 (1989).  However, "conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes."  Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991), quoting from Wang Labs., Inc. v. Business Incentives, Inc., 398 Mass. 854, 857 (1986).  "Courts must consider whether the nature, purpose, and effect of the

challenged conduct is coercive or extortionate." Diamond Crystal Brands, Inc. v. Backleaf, LLC, 60 Mass. App. Ct. 502, 507 (2004). See Zabin v. Picciotto, 73 Mass. App. Ct. 141, 169 (2008).

Here, based on the evidence presented at trial, the judge stated that Bass River was aware of the physical condition of the clubhouse, including the fact that the second floor was not accessible to persons with disabilities, when it entered into the assignment of the management contract. The judge further stated that no legally authorized agent for the city had made binding representations concerning a specific time frame for the completion of renovations to the clubhouse, and the management contract was silent on the matter. In addition, the judge stated that, although financial constraints precluded the city from immediately performing all of the repairs and improvements contemplated by the management contract and the Gale reports, the city did undertake such projects as municipal finances permitted. On that basis, we cannot say that the city's dealings with Bass River rose to the level of unscrupulous, coercive, or "[i]ntentionally gainful misconduct" that is characteristic of wrongdoing under G. L. c. 93A. McGonagle v. Home Depot U.S.A., Inc., 75 Mass. App. Ct. 593, 600 n.9 (2009). Accordingly, we conclude that the judge did not err in dismissing Bass River's c. 93A counterclaim.

7.  <u>Conclusion</u>.  The appeal filed by Tozer is hereby stayed until such time as the automatic stay in the bankruptcy case terminates in accordance with 11 U.S.C. § 362(c) (2012).  The judgment entered on October 3, 2014, is otherwise affirmed.

<u>So ordered</u>.