NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-1524                                    Appeals Court

KIRA WAHLSTROM  vs.  JPA IV MANAGEMENT COMPANY, INC., trustee,[1] & another.[2]


No. 17-P-1524.

Suffolk.     November 9, 2018. - June 10, 2019.

Present:  Rubin, Maldonado, & Lemire, JJ.


Practice, Civil, New trial, Conduct of counsel, Disqualification of judge.



Civil action commenced in the Superior Court Department on March 12, 2010.

The case was tried before Paul D. Wilson, J., and a motion for a new trial, filed on November 19, 2015, was heard by him.


Patricia A. DeJuneas (Robert J. Cordy also present) for the plaintiff.
Mark A. Aronsson for the defendants.


RUBIN, J.  Following a four-week jury trial, a verdict was returned in favor of the plaintiff in this case, which arose

---

[1] Of the John Philopoulos Associates Trust.

[2] JPA I Management Company, Inc.

when she was raped in a parking garage owned and operated by the defendants.  An employee of the defendants had been raped in the same parking garage by the same man less than two weeks prior to the rape that forms the basis of this lawsuit.  The jury concluded, among other things, that the defendants had failed to take due care to protect the plaintiff, who was a customer of the garage walking back to her car in the early morning hours of May 1, 2009, after completing her work as a lighting technician at a nearby nightclub in downtown Boston.

The defendants filed a postjudgment motion for a new trial. In a detailed opinion, the trial judge concluded that there was misconduct of plaintiff's counsel before the jury during trial that was not remedied by the judge's curative instructions.  The details of what the judge found amounted to misconduct will be spelled out infra in our discussion.  The judge painstakingly examined the events at trial.  In assessing the motion, he applied, as the defendants urged, the four-factor framework for considering claims of prejudicial attorney misconduct that we articulated in Fyffe v. Massachusetts Bay Transp. Auth., 86 Mass. App. Ct. 457, 472 (2014).  Critically the fourth factor articulated in Fyffe was "whether the error, in the circumstances, possibly made a difference in the jury's conclusion."  Id., quoting Commonwealth v. Lewis, 465 Mass. 119, 130-131 (2013).  Applying this test to each of four incidents of

what the judge concluded was attorney misconduct, and ultimately "with great regret," he allowed the motion for a new trial.[3,4]

The standard applied by the judge in assessing the motion for a new trial was the wrong standard. Consequently, the order allowing the motion for a new trial was in error. Although a remand for application of the proper standard by the judge who was present during trial would ordinarily be the appropriate disposition of a case such as this, there is in the trial court a pending motion for disqualification of the trial judge in this case. As we explain in part 2 of our opinion, we have concluded the most prudent course, therefore, is to stay the appeal to allow the judge to rule upon the plaintiff's pending motion for his disqualification. Since we are in as good a position as any judge who did not sit on the trial to assess the merits of the new trial motion, this procedure will allow us to determine whether a remand for reconsideration under the proper standard is preferable to our simply reaching the merits ourselves. First, though, we turn to the appropriate standard for a trial judge's evaluation in a civil case of a posttrial motion for a

---

[3] The judge also observed that the defendants had pointed to many instances of alleged misconduct other than the four upon which he rested his ruling.

[4] The judge denied the defendants' pending motion for remittitur as moot in light of his ruling on the new trial motion.

new trial, something about which some confusion has arisen in the trial courts, as exemplified by the instant case.

1. New trial standard. The standard a judge should apply in determining whether to allow a motion for a new trial in a civil case under Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974), even one based on alleged attorney misconduct, is relatively high. To begin with, if the motion is based upon claims of error that were, or could have been, brought prior to verdict, the judge need not even hear the motion. See Lonergan v. American Ry. Express Co., 250 Mass. 30, 38 (1924). If, in the judge's discretion, he or she does reach the merits, the standard is the one we articulated in Evans v. Multicon Constr. Corp., 6 Mass. App. Ct. 291, 295 (1978): "the judge should not take it upon [herself or] himself to nullify a jury's verdict by granting a new trial unless it appears on a survey of the whole case that otherwise a miscarriage of justice would result."

The reasons this standard is used should be clear. Trial has already been held, and a judgment has entered. Under our adversary system, the losing party has been free during trial to make before the trial judge whatever objections the party thought were appropriate. The judge has already had a chance to rule on these objections. Where he or she has sustained objections, and, where appropriate, has had an opportunity to attempt to cure errors that have taken place, the objecting

party has also had an opportunity to object to the adequacy of those curative measures, or even to seek a mistrial. The losing party thus has had a full bite of the trial court apple. And, under our system, that party is now entitled to a full bite of the appellate court apple.

In filing a motion for a new trial in the trial court on the basis of trial error, then, the losing party seeks a second bite at the trial court apple. And, in order to ensure justice is done, he or she may, at the judge's discretion, be given it. But it is in this light that the standard for allowance of a motion for a new trial can be best understood. It is by no means an impossibly high burden that is placed on the losing party, and motions for new trial are with regularity appropriately allowed by our trial court judges. But the new trial motion is not a mechanism for addressing individual errors at trial. It is an opportunity to allow the judge to take "a survey of the whole case" to ensure that "a miscarriage of justice" has not occurred. Evans, 6 Mass. App. Ct. at 295.

By contrast, Fyffe did not articulate a standard to be utilized by trial judges in evaluating motions for a new trial. Rather, it explicated an appellate standard of review, the prejudicial error standard. Fyffe involved two consolidated appeals, one from the denial of a motion for a new trial and one from the underlying judgment. Fyffe, 86 Mass. App. Ct. at 459.

As we explained, although our review of the denial of the motion for a new trial is limited to determining whether there was an abuse of discretion, a very difficult standard for a complaining party to meet, a less deferential standard is applicable when a party on direct appeal seeks reversal and a new trial. See id. at 470-471. In that circumstance, in a civil case we apply to preserved claims of error the well-known "prejudicial error" standard of review. Id. at 472. Under that standard, if there has been an error, we will reverse and, where appropriate, order a new trial unless we can "say with substantial confidence that the error would not have made a material difference." DeJesus v. Yogel, 404 Mass. 44, 49 (1989). Put another way, in the face of error, an appellant can obtain a new trial unless the error is "harmless." Comeau v. Currier, 35 Mass. App. Ct. 109, 112 (1993).[5] And it is this standard that the defendants here asked the judge to apply, arguing in reliance on Fyffe that, "When considering . . . a motion [for a new trial based on attorney misconduct], the courts apply the prejudicial error standard, which requires that the error 'injuriously affected the

---

[5] In the case of preserved constitutional error, in a criminal matter at least, reversal is even more likely, as we must conclude that the error was not only harmless but "harmless beyond a reasonable doubt." Commonwealth v. Vinnie, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998).

substantial rights of the parties.'  [G. L.] c. 231, §§ 119,

132; Fyffe, 86 Mass. App. Ct. at 474."

As Fyffe indicates, however, the Fyffe factors are simply a

way of determining whether a preserved claim of error arising

out of attorney misconduct is prejudicial under the appellate

prejudicial error standard of review.  See Fyffe, 86 Mass. App.

Ct. at 471 ("this case is also before us on direct appeal from

the judgment.  Therefore, the deferential standard applicable to

review of the new trial motion does not relieve us of the duty

to examine the record to determine whether instructions that

were given or not given by the judge when a matter was properly

brought to her attention amounted to an error of law, and to

assess whether the error was prejudicial").  They have nothing

to do with the standard to be applied in trial courts on motions

for a new trial.  Indeed, the prejudicial error standard of

appellate review in Fyffe did not even apply to our review of

the denial of the motion for a new trial, but only to our review

of the direct appeal from the judgment.  The appropriate

standard to be used by a trial judge considering a motion for a

new trial is not an appellate standard of review at all.

Of course, in one sense, the judge is permitted to engage

in a broader examination of the proceedings than we may even on

direct appeal.  That is because, although unpreserved claims of

error that do not touch on jurisdiction are waived for purposes

of appeal in almost all circumstances in a civil case, Palmer v.

Murphy, 42 Mass. App. Ct. 334, 338-339 (1997), in the interest

of justice, a judge evaluating a motion for a new trial is

permitted to consider even unpreserved claims of error like some

of those raised in the motion here.  See Lonergan, 250 Mass. at

38 ("While a judge may in his discretion permit such a question

to be presented on a motion for a new trial, he cannot be

required to consider it.  It is discretionary with him whether

to consider it or not, having regard to all the requirements of

justice").  See also Cassamasse v. J.G. Lamotte & Son, Inc., 391

Mass. 315, 320 (1984) (same).  But the question for the trial

judge is not whether there has been prejudicial error.  Indeed,

it is not even whether the more stringent appellate standard of

review we utilize in criminal cases in which unpreserved claims

of error are raised on appeal has been met -- whether there has

been a "substantial risk of a miscarriage of justice."  See

Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).[6]  The question is

---

[6] We find a substantial risk of a miscarriage of justice
unless we are persuaded that an error did not "materially
influence[]" a guilty verdict.  Alphas, 430 Mass. at 13, quoting
Commonwealth v. Freeman, 352 Mass. 556, 564 (1967).  "In making
that determination, we consider the strength of the
Commonwealth's case against the defendant . . . , the nature of
the error, whether the error is 'sufficiently significant in the
context of the trial to make plausible an inference that the
[jury's] result might have been otherwise but for the error,'
and whether it can be inferred 'from the record that counsel's
failure to object was not simply a reasonable tactical

whether an actual "miscarriage of justice would result" if the verdict were allowed to stand.  <u>Evans</u>, 6 Mass. App. Ct. at 295.

And, as our discussion implies, the purpose of an order granting a new trial motion is not to punish attorney misconduct.  If, because of attorney misconduct, "it appears on a survey of the whole case that . . . a miscarriage of justice would result" if the verdict were allowed to stand, such misconduct may, of course, support an order allowing a motion for a new trial.  <u>Id</u>.  But the new trial motion inquiry focuses on the harmful impact of the errors.  It is not the egregiousness of, or the disrespect to the court shown by, attorney misconduct that the new trial motion addresses.  There are other remedies for such misconduct available even in cases where it has not influenced the jury's consideration of the case to the extent that a miscarriage of justice has in fact occurred.

Although the judge here did express a conclusion that a new trial was warranted using the appropriate verbal formulation found in <u>Evans</u>, 6 Mass. App. Ct. at 295,[7] it is clear from the judge's extended and precise discussion, described in more

---

decision.'"  <u>Id</u>., quoting <u>Commonwealth</u> v. <u>Miranda</u>, 22 Mass. App. Ct. 10, 21 (1986).

[7] The judge did not cite <u>Evans</u>, but quoted an early articulation of the same standard in <u>Davis</u> v. <u>Boston Elev. Ry. Co</u>., 235 Mass. 482, 496 (1920).

detail infra, that his conclusion was based only on the application of the "prejudicial error" standard as articulated in Fyffe and argued by the defendants. This was in error.

2. Disposition of appeal. The plaintiff argues that, for two independent reasons, we should not remand the case for application of the appropriate standard.[8] First, she argues that the errors claimed by the defendants could not as a matter of law support allowance of the motion under the proper standard. Second, she argues that there would be no benefit to a remand. There is a pending motion in the trial court to disqualify the judge in this case, and she urges us to rule that he must be disqualified. She posits that if the judge who was present at trial must be disqualified, on a remand the motion would have to be heard by a judge who did not sit on the case. She argues that we are in as good a position as any such judge to assess the merits of the motion under the proper standard, and that rather than remanding we should do so and, she argues, conclude that it should have been denied. We turn to those two arguments in turn.

_____

[8] The defendants do not argue on appeal that, as a matter of law, the attorney misconduct in this case created an actual miscarriage of justice, but only that, if we find that the trial judge employed the incorrect standard, we should remand for reconsideration.

a.  The plaintiff argues first that the four claimed errors relied upon by the judge, even combined with several other claimed errors on which the judge did not rely, could not support a claim under the appropriate standard that the verdict reflects a miscarriage of justice.

The judge, employing all four Fyffe factors, first concluded that a reference in the opening statement by plaintiff's counsel to a discussion he had with the rapist, the contents of which the judge had already ruled were inadmissible as hearsay, violated the "spirit" but not the "letter" of his ruling.[9]  The judge reasoned as follows:  "First, there was a defense objection" (see Fyffe, 86 Mass. App. Ct. at 472 ["(1) whether the defendant seasonably objected" (quotation omitted)]); "Second, the issue of whether [the] [d]efendants should have taken additional security measures after the first rape was at the very heart of the case" (see id. ["(2) whether the error was limited to collateral issues or went to the heart

_____

[9] Plaintiff's counsel told the jury,

"[B]efore we came to trial, we had to consider whether [the rapist] could have been stopped, whether added security guards or increased lighting or cameras on each floor, or any combination thereof, would have made a difference, so we decided to ask the guy who did it.  So we met with him, as uncomfortable as that was, but that's all I'm allowed to tell you about that right now.  We wanted him to testify before you, but he is incarcerated for fifteen years, and it is safer if he stays where he is."

of the case"]); "Third, while I did instruct the jury that [they] should ignore what [plaintiff's counsel] had said, I should have gone further . . ." (see id. ["(3) what specific or general instructions the judge gave to the jury which may have mitigated the mistake"]); and "Fourth, . . . the improper statement may well have made [a] difference in the jury's conclusion" (see id. ["(4) whether the error, in the circumstances, possibly made a difference in the jury's conclusion"]).

There was an objection to this aspect of the opening by the third defendant at trial, LAZ Parking Limited LLC (LAZ), which the jury later found not liable, and the judge gave a curative instruction, telling the jury to "put out of your mind anything that [plaintiff's counsel] said about talking to [the rapist] and anything that he may or may not have said." The plaintiff points out that whether that instruction was or was not effective, the subject matter of the hearsay itself -- the rapist's statement that he "went back to the property because he didn't see any security" -- was elicited by the defendants' counsel in the cross-examination of the plaintiff's criminology witness, was not the subject of a motion to strike, and was not the basis for any claim of error in the motion for a new trial. She argues the reference in plaintiff's counsel's opening was

thus in any event cumulative of evidence that was before the jury.

Next, the judge relied on several instances in which the plaintiff's lawyer, in seeking to introduce a security video recording (video) which was not admitted, made reference to the contents of that video, saying that it would impeach the security guard's testimony that he did not see the rapist on the night of the first rape. The judge, again utilizing all four Fyffe factors, wrote, "This behavior raises a serious problem under the four Fyffe factors. First, the [d]efendants did object, and strenuously. Second, while the issue of whether the [d]efendants could have prevented the first rape was not central to this case as a matter of law, [plaintiff's counsel] nonetheless attempted to make it so in the face of my pretrial ruling to the contrary. Third, I failed to instruct the jury that [they] should ignore what [plaintiff's counsel] had said about the contents of the video contradicting the witness's testimony. Finally, I fear that the jury's possible misapprehension about the contents of the video may well have made [a] difference in the jury's conclusion." See Fyffe, 86 Mass. App. Ct. at 472 (listing the four factors).

But, the plaintiff points out, because the transcript was not finalized, the judge misunderstood the plaintiff's attorney to have said that the video showed the guard "visualizing the

rape" of the hotel employee -- words the judge quoted and which, the judge recognized, would not just be false, but inflammatory. In fact, however, the attorney said that the video showed the guard "visualizing the rap<u>ist</u>" (emphasis added). We have examined the video ourselves, which was marked for identification before the trial judge, and the video does show a silhouette of a guard in the same frame as the rapist for several seconds, although it does not show which direction the guard was looking at the time. The plaintiff also points out that defense counsel did not request a curative instruction.

Thirdly, the judge further concluded, again using the <u>Fyffe</u> factors, that references by plaintiff's counsel to cross claims in which the defendants and LAZ accused each other of negligence, and referred to the rape of the plaintiff merely as an "alleged rape," supported a new trial. The judge explained,

> "Application of the <u>Fyffe</u> factors suggests that this, too, was a serious matter. First, . . . the [d]efendants objected at trial when [p]laintiff's counsel violated the pretrial order [precluding reference to the cross claims]. Second, I failed to issue adequate curative instructions. Third, the rape was the central fact in the case, and therefore any suggestion that [the] [d]efendants denied its occurrence, or accused each other of negligence that caused the rape, was not a collateral matter. Fourth, these multiple statements by [p]laintiff's counsel . . . raise a serious danger that the jury's verdict was influenced by those statements."

See <u>Fyffe</u>, 86 Mass. App. Ct. at 472 (listing the four factors). The plaintiff points out that there was a curative instruction

with respect to the references to the cross claims and that the witness who was asked if she thought the rape was merely an "alleged rape" flatly said she believed the plaintiff had been raped.

And finally, with respect to an improper question by plaintiff's counsel asking a witness if the sale price of the defendants' hotel to which the garage was attached was 143 million dollars, the judge, who sustained an objection and instructed the jury to disregard the question before it was answered, acknowledged that, given that the verdict was lower than that sought by the plaintiff, the error might not have made a difference in the jury's conclusion.  Nonetheless, in concluding that the Fyffe analysis of this misconduct favored a new trial, the judge reasoned that "in the final analysis, [the] [p]laintiff's decision to put the sale price of the hotel before the jury is unconscionable."

But the plaintiff argues correctly that, as we have explained supra, egregiousness of misconduct absent an effect upon the jury is not a basis for finding the type of miscarriage of justice that warrants nullifying the jury's verdict.

Whatever the strength of the plaintiff's arguments, however, the trial judge remains in the best position to assess the claim that there has been a miscarriage of justice.  We therefore would ordinarily simply vacate the order allowing the

motion for a new trial and remand to allow the judge to rule upon the motion applying the correct standard. As we have described, in evaluating the motion, the judge must examine the entire course of the proceedings, and the trial judge is in the best position to do so in the first instance.

b. The plaintiff, however, argues secondly that a remand would be "futile" because of a pending motion to disqualify the trial judge based on remarks he has made about the trial, the attorneys who appeared before him, and his ruling on the new trial motion. The plaintiff urges us to decide that there has been at least an "appearance of partiality," and to disqualify the judge. And, if the judge who sat on the trial is disqualified, the plaintiff argues, we are in as good a position as any judge to whom the case might be reassigned to assess the defendants' motion.

Because the case has been in this court, the motion for disqualification has not yet been ruled upon. Although we agree that, if it were allowed, we would be in as good a position as any other judge to whom the case might be assigned to assess the claim made in the new trial motion, we decline the plaintiff's invitation to decide the motion to disqualify in the first instance. Motions for recusal are "generally left to the discretion of the trial judge." Haddad v. Gonzalez, 410 Mass. 855, 862 (1991). Accord id. ("When faced with 'a question of

his capacity to rule fairly, the judge [must] consult first his own emotions and conscience' [and] then [is] required to attempt an objective appraisal of whether this was a proceeding in which 'his impartiality might reasonably be questioned'" [citations omitted]).

Therefore, while expressing no view on the motion pending before the trial judge, we stay this appeal in order to allow the motion to disqualify to be litigated and decided forthwith. If it is allowed, we will assess the motion for a new trial under the appropriate standard.  If it is denied, we will vacate the order allowing the new trial motion and remand the case as described <u>supra</u>.[10]  The parties shall submit a status report to this court in sixty days.

<u>So ordered</u>.

---

[10] We note that the defendants did not argue in their memorandum below that they were entitled to a new trial under the appropriate standard.