SUPERIOR COURT 
 
 JAYNE CONWAY vs. PLANET FITNESS HOLDINGS, LLC & others[1]

 
 Docket:
 1377CV00756-D
 
 
 Dates:
 June 26, 2020
 
 
 Present:
 /s/Jeffrey T. Karp Associate Justice, Superior Court
 
 
 County:
 ESSEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION FOR NEW TRIAL, JUDGMENT NOTWITHSTANDING THE VERDICT, OR RELIEF FROM JUDGMENT (Paper No. 127)
 
 

             This action arose out of a settlement agreement between plaintiff Jayne Conway ("Conway") and defendants Planet Fitness Holdings, LLC ("Planet Fitness"), Pla-Fit Franchise, LLC ("Pla-Fit"), Michael Grondahl ("Michael"), Marc Grondahl ("Marc"), Christopher Rondeau ("Rondeau"), and Richard Moore ("Moore"), which followed Planet Fitness's termination of Conway from her position as Chief Financial Officer ("CFO") in November 2011.[2]
            In April and May 2019, this Court presided over the trial of this matter before a jury. The jury returned a verdict in favor of Conway.
            Now before the Court is Defendants' Motion For New Trial, Judgment Notwithstanding The Verdict, Or Relief From Judgment Pursuant To Rules 50, 59, And 60 And Motion For Remittitur Pursuant To Rule 59 ("Motion") (Paper No. 127).[3] In the
---------------------------
[1] Pla-Fit Franchise, LLC; Michael Grondahl, individually and as Trustee of the Michael A. Grondahl Revocable Trust of 2006; Marc Grondahl, individually and as Trustee of the Marc Grondahl Revocable Trust of 2006; Christopher Rondeau, individually and as Trustee of the Christopher J. Rondeau Revocable Trust of 2006; and, Richard Moore.
[2] The Court will refer to Michael Grondahl and Marc Grondahl by their first names.
[3] The parties waived their right to a hearing on the Motion.
                                                            Page 1 of 24
Motion, the defendants advance several reasons why the Court should grant them a new trial, including that the jury's award of damages is excessive.
            As is discussed below, the Court agrees that the jury's award of damages is excessive and that a new trial on damages is warranted. However, the Court disagrees with the defendants that a new trial is otherwise warranted. Consequently, the Motion is ALLOWED in part and DENIED in part.
BACKGROUND 
Relevant Facts 
            The parties presented the following relevant evidence at the trial.[4]
            Planet Fitness, a limited liability company, owns and operates health clubs. It also franchises health clubs through its subsidiary, Pla-Fit. Michael, Marc, and Rondeau founded Planet Fitness in the early 1990s and served in various capacities as its officers.[5] They also collectively owned a controlling membership interest in Planet Fitness.
            In approximately April 2010, after (and during) a period of explosive growth and in contemplation of exploring a public stock offering, Planet Fitness hired Conway, a longtime corporate executive, to serve as its chief financial officer.[6] She was the first person to serve in that capacity at Planet Fitness. In connection with her hiring, Conway and Planet Fitness entered into an employment agreement wherein Planet Fitness
---------------------------
[4] Additional relevant facts are set forth, infra, in the Discussion section.
[5] Michael served as chief executive officer ("CEO"), Rondahl served as chief operating officer, and Marc served as chairperson of the board of managers.
[6] Conway served as chief financial officer at Gulf Oil, LP, prior to her employment with Planet Fitness.
                                                            Page 2 of 24
agreed, inter alia, to grant Conway a membership interest of 1.5% of the full equity value of Planet Fitness in excess of $240,000,000 upon vesting. The parties memorialized their agreement regarding Conway's membership interest in the Planet Fitness Holdings, LLC, Restricted Interest Agreement ("RIA").
            In November 2011, Planet Fitness terminated Conway's employment. Conway believed Planet Fitness improperly terminated her and retained counsel to pursue a claim for wrongful termination against it. During the negotiation of the settlement of her wrongful termination claim, Planet Fitness and Conway jointly agreed to retain Delphi Valuation Advisors ("Delphi") to determine the value of Planet Fitness as of the date of Conway's termination and, hence, the value of Conway's membership interest therein.
            In November and December 2012, Delphi issued draft and final valuation reports, respectively, to Conway and the defendants. The reports were prepared using information provided to Delphi by Planet Fitness. In the valuation reports, Delphi stated that Planet Fitness management was actively negotiating the sale of Planet Fitness to a private investor and that the valuation of Planet Fitness used in the negotiations was between $315,000,000 and $355,000,000.
            In January 2013, relying on, inter alia, Delphi's valuation reports, Conway settled her wrongful termination claim with Planet Fitness by entering into a Separation and Settlement Agreement ("Settlement Agreement").7 The Settlement Agreement required Planet Fitness to pay Conway $500,000 in consideration of her claim to a membership interest in Planet Fitness and the release of her wrongful termination claim.
            At all relevant times, Moore served as Planet Fitness's general counsel and its prime negotiator in settlement efforts with Conway's counsel.
                                                            Page 3 of 24
            In approximately April 2013, Conway learned that in mid-December 2012, i.e., prior to the date of Delphi's final valuation report which reported that Planet Fitness was actively negotiating its sale, the sale of a 75% interest in Planet Fitness to a private equity firm, TSG Consumer Partners ("TSG"), had been completed (and was no longer being negotiated). Conway further learned TSG's purchase was based on an equity value of Planet Fitness of approximately $480,000,000. Consequently, Conway believed the defendants committed fraud during the negotiation of the settlement. Thereafter, this litigation ensued.
Relevant Proceedings 
            On October 25, 2018, the Court entered summary judgment in favor of the defendants on Count V (declaratory judgment) of the Complaint (Paper No. 1), and declared that the effective date of the transfer of Conway's membership interest in Planet Fitness to Planet Fitness was March 8, 2012. (See Memorandum of Decision at Paper No. 58).
            This Court presided over the trial of this matter before a jury during approximately twelve trial days in April and May 2019. Conway moved for trial on Counts I (fraud), Ill (negligent misrepresentation), and VI (breach of the implied covenant of good faith and fair dealing) of the Complaint. The substantive law of New Hampshire applied to those claims and the Court instructed the jury under New Hampshire law. The jury heard testimony from twelve witnesses and 65 exhibits were admitted for its consideration. (See Exhibit List at Paper No. 114).
                                                            Page 4 of 24
            On May 3, 2019, the jury, answering special questions, returned a verdict in favor of Conway in the amount of $5,360,000, finding that the defendants committed fraud (Count I of the Complaint) and made negligent misrepresentations (Count III of the Complaint) to induce her to sign the Settlement Agreement. (See Special Verdict Form at Paper No. 113). The jury found in favor of the defendants on Conway's claim for breach of the implied covenant of good faith and fair dealing (Count VI of the Complaint).[8]
            On December 20, 2019, the Court allowed, in part, Plaintiff's Motion To Approve Judgment (Paper No. 117) (insofar it requested judgment of $5,360,000) and denied it in part (insofar as it requested prejudgment interest pursuant to Massachusetts law at G.L. c. 231, § 6B). In sum, the Court ruled that prejudgment interest should be calculated pursuant to New Hampshire law at N.H. Rev. Stat. § 336:1(11), and post-judgment interest should be calculated pursuant to Massachusetts law in the normal course. (See Memorandum of Decision at Paper No. 120). Therefore, the Court entered judgment on Counts I and III of the Complaint for Conway against all remaining defendants in the amount of $5,360,000, plus prejudgment interest of $928,471.11. The Court entered the aforementioned declaratory judgment on Count V and judgment of dismissal on the remaining Counts of the Complaint (i.e., Counts II, IV, VI, VII, and VIII).
---------------------------
[8]As stated, summary judgment entered prior to trial on Count V of the Complaint (seeking declaratory relief) in favor the defendants. Conway dismissed the remaining Counts (II, IV, VII, and VIII) of the Complaint prior to trial.
                                                            Page 5 of 24
DISCUSSION
            In the Motion, the defendants contend that the Court should grant a new trial pursuant to Mass. R. Civ. P. 59(a) for five reasons. First, they object to the amount and basis of the damages awarded by the jury, claiming that the amount awarded is against the weight of the evidence at trial. The defendants request a new trial on damages or remittitur. Second, they argue the Court erred in its instructions to the jury on the fraud claim. Third, the defendants contend the Court erred in admitting evidence regarding Moore's character and that the evidence was highly prejudicial. Fourth, they argue Conway failed to prove that they made a false statement of (or concealed) a material fact and that she justifiably relied on the statement when signing the Agreement. Fifth, the defendants contend Conway's counsel engaged in "prejudicial misconduct" during the trial.
            The defendants cite Mass. R. Civ. P. 50(b) and 60 in the title and first paragraph of the Motion, and assert in the first paragraph that they "move for" judgment notwithstanding the verdict ("JNOV"). However, the defendants do not argue anywhere in their submissions that any of the five aforementioned bases for post-trial relief warrant entry of JNOV under Rule 50(b) or relief from the judgment under Rule 60. In the absence of any argument in support of their fleeting requests for JNOV and relief from the judgment, the defendants have waived those claims for relief. Therefore, the Court DENIES so much of the Motion that seeks entry of JNOV and relief from the judgment.
            After setting forth the appropriate legal standards at issue, the Court will address each of the defendants' arguments in turn.
                                                            Page 6 of 24
            I. STANDARD OF REVIEW 
            "A trial judge should set aside a jury verdict in a civil case [pursuant to Mass. R. Civ. P. 59] only if the judge concludes that 'the verdict is so markedly against the weight of the evidence as to suggest that the jurors allowed themselves to be misled, were swept away by bias or prejudice, or for a combination of reasons, including misunderstanding of applicable law, failed to come to a reasonable conclusion."' Beverly v. Bass River Golf Mgt., Inc., 92 Mass. App. Ct. 595, 602 (2018) (quoting W. Oliver  Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 748 (1993)). However, "a judge is not to 'act merely as a 13th juror [to] set [the] verdict aside simply because he would have reached a different result had he been the trier of facts." Fitzpatrick v.  Wendy's Old Fashioned Hamburgers of New York, Inc., 96 Mass. App. Ct. 410, 430 (2019), furth. rev. granted, 484 Mass. 1104 (2020) (quoting Clapp v. Haynes, 11 Mass. App. Ct. 895, 896 (1980) (citation omitted)).
            As for the defendants' request for remittitur, although the Court may not substitute its judgment of damages for that of the jury, D'Annolfo v. Stoneham Hous.  Auth., 375 Mass. 650, 662 (1978), the Court has broad discretion in ruling on a motion for remittitur. Clifton v. Massachusetts Bay Transp. Auth., 445 Mass. 611, 623 (2005) (citation omitted). An award of damages is excessive and may warrant remittitur if it: (a) is "'greatly disproportionate to the injury proven"; (b) "'represent[s] a miscarriage of justice"; or, (c) is "'so great that it may be reasonably presumed that the jury, in assessing them, did not exercise a sound discretion, but were influenced by passion, partiality, prejudice or corruption." Reckis v. Johnson & Johnson, 471 Mass. 272, 299 (2015) (internal citations and ellipsis omitted); see also DaPrato v. Massachusetts 
                                                            Page 7 of 24
Water Resources Auth., 482 Mass. 375, 393 ("It is an error of law for a court to allow an award of damages for emotional distress that is 'greatly disproportionate to the injury proven or represented a miscarriage of justice.") (citation omitted); Labonte v. Hutchins  & Wheeler, 424 Mass. 813, 824 (1997) (it is an error of law warranting a new trial "if the damages awarded were greatly disproportionate to the injury proven...") (quotation omitted); Doconto v. Ametek, Inc., 367 Mass. 776, 787 (1975) (same).
II. A NEW TRIAL ON DAMAGES IS WARRANTED BECAUSE THE  AWARD OF $5,360,000 IS EXCESSIVE AND NOT SUPPORTED BY THE EVIDENCE AT TRIAL 
            As stated, the defendants argue that the amount of the damages awarded to Conway by the jury, $5,360,000, is against the weight of the evidence at trial and that the Court should order a remittitur or a new trial on damages. The defendants contend that, under New Hampshire law, the jury was required to base its award of damages on the amount for which the parties would have settled Conway's wrongful termination claim in the absence of the defendants' misrepresentations. They argue that the jury's award of $5,360,000 is supported by nothing more than Conway's estimate during the trial of the largest amount she could have obtained had she not settled her wrongful termination claim (i.e., had she not signed the Settlement Agreement) and litigated it. The defendants contend that the jury misapplied the law and awarded Conway at least $700,000 more than the evidence at trial supported.
            For her part, Conway opposes remittitur and a new trial on damages. She points to her testimony at trial that she was seeking to recover $5,300,000 from the defendants "as a result of having learned the true facts of the sale of Planet Fitness to TSG and the amount of money the defendants paid themselves in cash distributions from the date of
                                                            Page 8 of 24
her termination to the day of the sale." (Plaintiff's Opposition, p. 4) (Paper No. 132). Conway contends that this testimony supports the jury's award of $5,360,000. The Court disagrees with Conway and (mostly) agrees with the defendants.
            The parties agree that the Court properly instructed the jury, under New Hampshire law, regarding damages. That instruction is as follows:
In awarding damages to Ms. Conway, you should determine what the settlement amount in the Separation And Settlement Agreement would have been had the parties known the actual material facts. When doing so, you should assume that Ms. Conway and the defendants would have reached a settlement had the misrepresentation not been made and the correct information was disclosed. So, you are not to concern yourself with determining the merits of Ms. Conway's claim for wrongful termination, and you should not try and award Ms. Conway damages based on what another jury might have awarded her in a trial of those claims. Rather, you may consider what the parties thought at the time about the merits of Ms. Conway's claim for wrongful termination in determining the settlement they would've reached had the misrepresentation not been made.
Jury Instructions, p. 11 (Trial Exhibit T) (emphasis added).
            Given this instruction, the special question on the verdict form regarding the award of damages asked the jury to answer the following question (if they found for Conway on any of her three claims):
Damages
15. What sum of money would Ms. Conway and the defendants agreed upon as the settlement amount in the Separation And Settlement Agreement if the correct information had been disclosed? (Do not duplicate your award of damages if you have found that Ms. Conway proved more than one of her claims).
$(Amount in Figures)
(Amount in Words)
 
                                                            Page 9 of 24
 
Special Verdict Form, p. 4 (Paper No. 113) (original emphasis).
            As stated, having found for Conway on her claims of fraud and negligent misrepresentation, the jury answered Question 15 on the Special Verdict Form by awarding her $5,360,000.
            In determining whether remittitur is warranted, the question before the Court is whether the award is "'greatly disproportionate to the injury proven[,]"' wrepresent[s] a miscarriage of justice[,]"' or is "'so great that it may be reasonably presumed that the jury, in [awarding damages], did not exercise a sound discretion, but were influenced by passion, partiality, prejudice or corruption." Reckis, 471 Mass. at 299 (citations omitted). In order to answer that question, the Court must consider the evidence at trial regarding the amount Conway and the defendants would have agreed upon to settle Conway's wrongful termination claim if the defendants had not made misrepresentations during the settlement negotiations (i.e., if the correct information about the TSG transaction had been disclosed to Conway).
            The evidence at trial was sparse regarding the amount for which Conway would have settled her wrongful termination claim against the defendants if they had not made misrepresentations. On the other hand, Conway offered much evidence regarding the amount she believed her wrongful termination claim would have been "worth" if she knew the truth about the TSG transaction, how much her "wrongful termination damages" would have been, and even the amount she would have been "entitled to" under such circumstances.
                                                            Page 10 of 24
            For example, Conway testified during direct examination she believed if she "knew everything," the total amount of damages the defendants owed her at the time of settling her wrongful termination claim was $5,110,000. Conway testified in detail regarding how she calculated this amount by enumerating the amount of several of its components, such as the amount of lost wages, lost bonuses, and the value of her equity rollover. During direct examination, Conway testified that the total of these components was $5,360,000, and she arrived at the maximum amount she would have "recovered" if she litigated the claim (i.e., $5,110,000) by deducting $250,000 in litigation costs she estimated she would have incurred had she litigated, and not settled, her wrongful termination claim. During direct examination, Conway's description of what the components of her damages represented was slightly different each time she described a component. However, her description of what the sums of $5,360,000 and $5,110,000 represented was clear: the maximum gross and net "value," respectively, of her wrongful termination claim if she knew all of the correct information before settling.[9]
            Conway's testimony in this area during cross-examination continued the same theme. During cross-examination, she testified that, pursuant to the RIA and her employment agreement, she believed she was "entitled to" $4,800,000 (i.e., $5,300,000 less the $500,000 Planet Fitness paid her when signing the Agreement).
---------------------------
[9] During direct examination, Conway referred to the enumerated components of her damages as follows: what "the value" of her claims would have been had she known "the information" before settling "her case"; the amount she "would have received" had she known all of the information and she "pursued her claims" against Planet Fitness; the amount she was "entitled to"; how much her claim was "worth" had she "kn[own] everything"; what her "wrongful termination damages would have been" at the time of settlement if she knew everything; and, the total damages she believed she was owed at the time of settling her case if she knew all the facts.
                                                            Page 11 of 24
            Thus, the evidence of damages required under New Hampshire law, i.e., the amount for which the parties would have settled Conway's wrongful termination claim in the absence of the defendants' misrepresentations, was less than clear. However, the evidence of the maximum value of her claim for wrongful termination if she had litigated, rather than settled it by entering into the Settlement Agreement was clear: $5,360,000. In fact, Conway's counsel reminded the jury of this during closing arguments when he argued:
So the total known damages would have been $5,360,000. . . . So[,] that would have been the value of the claim. But[,] we understand this was a settlement. This wasn't a claim that was going to go anywhere to trial.
Tr. 2403 — 2404 (emphasis added).
            To be sure, Conway's counsel stated in closing argument that the maximum amount for which she would have settled her wrongful termination claim if the defendants had not made the misrepresentations was $4,700,000. Her counsel even acknowledged during closing argument that "[he] can't ask you [the jury] to give my client all of the damages she would have been able to sue for . . . ." (Tr. 2404). Now, Conway requests the Court ignore the evidence, her concession during closing argument that she was not entitled to $5,360,000, and her specific request for damages of $4,700,000. The Court will not do so as it is neither consonant with justice nor supported by the evidence at trial.
            In sum, the Court rules that the jury's award of damages of $5,360,000 is excessive and "markedly against the weight of the evidence as to suggest that the jurors allowed themselves to be misled, were swept away by bias or prejudice, or for a combination of reasons, including misunderstanding of applicable law, failed to come to
                                                            Page 12 of 24
a reasonable conclusion.'" Bass River Golf Mqt., Inc., 92 Mass. App. Ct. at 602 (citation omitted).
            The Court "has the 'discretion to fix the amount of remittitur to bring the verdict anywhere within the range of verdicts supported by the evidence." Hlatky v. Steward  Health Care Sys., LLC, 484 Mass. 566, 589 (2020) (citation omitted); see also Baudanza v. Comcast of Mass., 454 Mass. 622, 630 (2009) ("In ordering an additur or remittitur, the judge is not obliged to make the smallest modification possible; rather, the judge has discretion `to bring the verdict anywhere within the range of verdicts supported by the evidence.") (citation omitted); Clifton, 445 Mass. at 623 ("Rule 59(a) requires that a judge remit only so much of the damages 'as the court adjudges is excessive,' in order to bring the award within the range of verdicts supported by the evidence.") (citation omitted).
            Here, the evidence supports an award of damages of $4,200,000 to Conway. This amount represents the maximum amount of money supported by the evidence at trial that Conway and the defendants would have agreed upon as the settlement amount in the Separation And Settlement Agreement if the correct information had been disclosed (i.e., $4,700,000), less the sum of $500,000[10] that the defendants previously paid Conway pursuant to that agreement.[11]
---------------------------
[10] Conway conceded in her written submission in opposition to the Motion that she should remit the sum of $500,000 from the award of damages, representing the amount the defendants previously paid her in settlement.
[11] The defendants' argument that the award should be remitted to $726,516 is without merit because it is speculative and without a basis in the evidence at trial.
                                                            Page 13 of 24
            For the forgoing reasons, so much of the Motion that requests a new trial on damages is ALLOWED. Within twenty-one (21) days of the entry of this Memorandum of Decision and Order, plaintiff Jayne Conway shall file a notice that she will accept a reduced award of damages of $4,200,000. Mass. R. Civ. P. 59(a). In the event the Court receives such notice, the Amended Judgment On Jury Verdict (Paper No. 126) shall be vacated as to damages and a Second Amended Judgment in favor of the plaintiff shall enter in the amount of $4,200,000.[12] If the Court does not receive such timely notice, it will schedule a trial assignment conference so that the parties may select a date for a new trial before a jury limited to the issue of damages on Conway's claims for fraud (Count I) and negligent misrepresentation (Count III).
III. A NEW TRIAL IS NOT WARRANTED BY THE COURT'S  INSTRUCTIONS TO THE JURY ON THE CLAIM OF FRAUD 
            The defendants next argue the Court must grant a new trial because it erred in the following portion of the instructions to the jury on Conway's fraud claim:
Furthermore, the defendants may also be found to have committed fraud if Ms. Conway proves by clear and convincing evidence that the defendants, in making a statement of material fact, were less than candid or told half-truths about the material fact.
Jury Instructions, § V, p. 3 (Paper No. T) (emphasis added).
            The defendants argue that the portion of the above quoted jury instruction on fraud is an inaccurate statement of New Hampshire law. They further contend that the
---------------------------
[12] Of course, as the Court previously ruled, prejudgment interest thereon shall be calculated pursuant to New Hampshire law at N.H. Rev. Stat. § 336:1(11), and post-judgment interest shall be calculated pursuant to Massachusetts law in the normal course on Counts I and III of the Complaint. (See Memorandum of Decision at Paper No. 120). Declaratory judgment on Count V and judgment of dismissal on the remaining Counts of the Complaint (i.e., Counts II, IV, VI, VII, and VIII) likewise shall enter. (Id.).
                                                            Page 14 of 24
error was prejudicial because it "permitted the jury to find liability based merely on a failure to speak — which does not exist in the absence of a duty" to speak by the defendants, and no such duty existed in this case. On the other hand, Conway argues that the instruction was neither improper nor prejudicial.[13]
            As the SJC recently observed concerning instructions to the jury:
"In a civil trial, a 'judge should instruct the jury fairly, clearly, adequately, and correctly concerning principles that ought to guide and control their action.' . . . The judge is 'not bound to instruct in the exact language of the [parties'] requests,' however, and 'has wide latitude in framing the language to be used in jury instructions as long as the instructions adequately explain the applicable law.' . . . Moreover, '[the court should] consider[] the adequacy of the instructions as a whole, not by fragments."
DaPrato, 482 Mass. at 383 n.11 (internal quotation and citations omitted). Moreover, "[w]hen reviewing jury instructions to which there has been an objection, [the court] conduct[s] a two-part test: 'whether the instructions were legally erroneous, and (if so) whether that error was prejudicial."' Kelly v. Foxboro Realty Assocs., LLC, 454 Mass. 306, 310 (2009) (citations omitted). Thus, the Court reviews the instructions "for legal error resulting in prejudice to the moving party." Green, petitioner, 475 Mass. 624, 629 (2016) (citations and footnote omitted).
            Here, leaving aside whether the instruction at issue is a misstatement of New Hampshire law, the instruction caused no prejudice to the defendants. The purported offensive instruction consisted of eleven words in the fraud instruction, which ran for
---------------------------
[13] The parties agree that the defendants properly objected to this instruction at the charge conference and after the Court read it to the jury. Nevertheless, objection during the trial to an instruction to the jury is not a precondition for the trial judge to grant a new trial based on an error in its instructions. Farrell v. Matchett, 310 Mass. 87, 90 (1941); see also Galvin v. Welsh  Mfg. Co., 382 Mass. 340, 343 (1981) (trial judge may grant a new trial for reasons not argued by the moving party in its motion for new trial) (citation omitted).
                                                            Page 15 of 24
over three pages of single-spaced type. Furthermore, contrary to the defendants' argument, the allegedly offending language did not "permit[] the jury to find liability based merely on a failure to speak." In fact, the objectionable language presupposes spoken words — words that were "less than candid" or "half-truths." Nothing in the instructions to the jury on Conway's fraud claim supported finding the defendants liable for their silence. Moreover, in the Special Verdict Form, the jury was asked, and it found, that "Ms. Conway prove[d] by clear and convincing evidence that any of the defendants made a false statement about, or concealed, (i.e., misrepresented) a material fact to her." (Special Verdict Form, Question 1, p. 1) (Paper No. 113) (emphasis added).
            Therefore, the defendants' argument that the Court must grant them a new trial due to the aforementioned purported misstatement of law in the Court's instructions to the jury is without merit and so much of the Motion that requests a new trial on that basis is DENIED.
IV. A NEW TRIAL IS NOT WARRANTED DUE TO THE ADMISSION INTO EVIDENCE REGARDING MOORE'S CHARACTER
            The defendants next argue the Court must grant a new trial because the Court erred in admitting "highly prejudicial evidence" regarding Moore's "character" through the improperly "sanitized" deposition testimony of Michael, Planet Fitness's CEO. They claim the Court erred in admitting "sanitized" deposition testimony of Michael that, shortly before his resignation and retirement from his employment on January 1, 2013, he learned Moore lied to him during Moore's interview for the general counsel position at Planet Fitness.14 The alleged lie concerned an allegation of "misconduct" by Moore
---------------------------
[14] Moore denied he lied to Michael.
                                                            Page 16 of 24
many years before. The defendants contend that the deposition testimony was irrelevant and highly prejudicial because it broadly cast Moore, Planet Fitness's chief negotiator in the settlement of Conway's wrongful termination claim, as a liar. The defendants further contend that the "sanitization" (i.e., "bowdlerization")[15] of Michael's deposition testimony before it was read to the jury at trial changed the meaning of the testimony by "mischaracterizing" the "real" reason Michael resigned. They argue that, according to his deposition testimony, Michael was more upset about specific information he learned regarding the allegations of the "misconduct" than the fact that Moore lied to him about it.
            For her part, Conway argues that the disputed testimony showed that Michael, one of Planet Fitness's founders and its CEO, held such a firm belief that Moore lied to him and that the lie was so significant that he resigned his position in protest. She further claims that Michael's deposition testimony was relevant because it showed that Planet Fitness's CEO held a firm belief that Moore had lied to him, but failed to take any action to remove Moore from his role in settling Conway's wrongful termination dispute with Planet Fitness.
            The defendants' argument that the bowdlerization of Michael's deposition testimony when presenting it to the jury resulted in a mischaracterization of evidence is unpersuasive. In order to illustrate this argument, the defendants have submitted a sideby-side comparison of Michael's deposition testimony and the "sanitized" version read to the jury. (See Defendants' Supplemental Analysis Regarding Moore Character
---------------------------
[15] "Bowdlerize" means "to expurgate (something, such as a book) by omitting or modifying parts considered vulgar." https://www.merriam-webster.com/dictionary/bowdlerize (last accessed June 23, 2020).
                                                            Page 17 of 24
Evidence And Sanitization Of Testimony, pp. 2 -3) (Paper No. 128). The Court has closely reviewed the defendants' submission, as well as Michael's testimony, in full, at trial. The Court finds no error or prejudice to the defendants in the sanitization. The Court endeavored to keep information about the long ago allegations against Moore from the jury and did so in a manner that did not change the meaning or spirit of Michael's testimony.
            On the other hand, the defendants' argument that the Court erred in admitting into evidence Michael's deposition testimony regarding his belief shortly before January 1, 2013, that Moore lied to him during Moore's job interview (and that Michael ultimately resigned his position at Planet Fitness as a result) has some merit. A reasonable argument could be made that the evidence was only marginally relevant, as this Court initially ruled, especially given that Michael resigned shortly after learning of the lie and thus had little time or incentive to intervene and remove Moore as Planet Fitness's chief negotiator of Conway's dispute.
            However, with one minor exception,[16] the evidence was not prejudicial to the defendants for several reasons. First, Michael testified that, although Moore lied to him during the hiring process, Moore did not lie to him "in connection with the appraisal that was done for Jayne Conway's shares of Planet Fitness stock." (Tr. 1244 — 1243). Second, at the conclusion of Michael's testimony, the Court instructed the jury that:
[Moore's] alleged misstatement concerned an incident in Mr. Moore's personal life. The alleged misstatement did not involve anything
---------------------------
[16] During his deposition testimony that Conway's counsel read to the jury, counsel asked Michael whether there was other information about Moore that led Michael to believe Moore was a "bad guy." (Tr. 1243). Michael responded that lying was "enough to consider him a bad guy." (Id.). The Court had previously excluded all references to Michael's belief Moore was a "bad guy." The defendants did not object at the time and this fleeting reference, although arguably prejudicial, was immaterial.
                                                            Page 18 of 24
professional and did not relate to Mr. Moore's job duties at Plant Fitness. I will also instruct you, as I instructed you in my precharge, . . . and will remind you again, that you can never speculate in this as jurors. . . . So, please do not speculate in this matter as to the subject matter of the alleged misstatement and the dispute between Mr. Moore and Mr. Grondahl beyond what I just told you about.
Tr. 1272 — 1273; see also Proposed Limiting Instruction Concerning Grondahl/Moore Disagreement (Paper No. 86).[17] Third, Conway did not refer to this evidence in her closing argument.[18] Fourth, the objectionable testimony was only a brief portion of Michael's lengthy testimony at trial (i.e., it covered less than three pages of the 31 pages of the transcript of Michael's trial testimony).
            In sum, the disputed evidence was not prejudicial to the defendants and does not support a finding that the jury was "swept away by bias or prejudice, or . . . failed to come to a reasonable conclusion." Bass River Golf Mqt., Inc., 92 Mass. App. Ct. at 602 (citation omitted). Consequently, so much of the Motion that requests a new trial due to the admission of the Moore "character" evidence is DENIED.
V. A NEW TRIAL IS NOT WARRANTED DUE TO THE PURPORTED  INSUFFICIENCY OF EVIDENCE THAT DEFENDANTS MADE A FALSE  STATEMENT OF MATERIAL FACT AND CONWAY JUSTIFIABLY  RELIED ON IT 
            The defendants next argue the Court must grant a new trial because Conway failed to prove that they made a false statement of (or concealed) a material fact and that she justifiably relied on the statement when settling her wrongful termination claim and signing the Settlement Agreement.
---------------------------
[17] "The jury are presumed to follow the judge's instructions." Commonwealth v. Maynard, 436 Mass. 558, 571 (2002) (citing Commonwealth v. Stone, 366 Mass. 506, 513 (1974)).
[18] Not only did Conway refrain from referring to Moore's alleged lie during the hiring process in her closing argument, she credited Moore for telling the truth about another issue. (Tr. 2405).
                                                            Page 19 of 24
            The Court has thoroughly considered the arguments advanced by the defendants. In so doing, the Court carefully reviewed its voluminous notes from the trial and the parties' submissions. Substantially for the reasons argued in opposition by Conway, the Court finds no basis to believe that the jury's finding for Conway on her claims of fraud and negligent misrepresentation was "'so greatly against the weight of the evidence [to suggest] that it was the product of bias, misapprehension or prejudice." Jamqochian, 425 Mass. at 571 (citation omitted). The jury conscientiously deliberated and reached a verdict via a special verdict that required them to conclude that Conway met her burden as to each element of the claims. The evidence amply supported the verdict. Therefore, so much of the Motion that requests a new trial based on insufficiency of the evidence is DENIED.
VI. A NEW TRIAL IS NOT WARRANTED DUE TO ALLEGED  PREJUDICIAL MISCONDUCT BY PLAINTIFF'S COUNSEL DURING  THE TRIAL 
            The defendants' last argument in support of their request for a new trial is that Conway's counsel engaged in two instances of "prejudicial misconduct" during the trial. First, they claim that during closing argument, Conway's counsel improperly expressed his personal belief that, with respect to her job performance, "they [ trash[ed] her and [he] thought it was awful that they did that because there was no evidence . . . about any problems with her performance at work." (Tr. 2400). The defendants argue that this statement was "patently false," generally "inflammatory," and made with the expectation of "inflame[ing] anti-corporate animus."
                                                            Page 20 of 24
            Second, the defendants argue that Conway's counsel twice improperly displayed to the jury, on a large screen, a copy of a Securities and Exchange Commission ("SEC") complaint filed against David Patrick, a former business advisor to Planet Fitness. The defendants claim that the two acts of displaying the SEC complaint were lengthy, the subject of objections by the defendants that the Court sustained, and "was clearly intended to suggest to the jury that Planet Fitness was an unsavory company."
            As a preliminary matter, the Court need not hear or decide these arguments because they are "based upon claims of error that were, or could have been, brought prior to verdict." Wahlstrom v. JPA IV Mgt. Co., Inc., 95 Mass. App. Ct. 445, 447 (2019) (citation omitted). As the Appeals Court recently observed:
The reasons this standard is used should be clear. Trial has already been held, and a judgment has entered. Under our adversary system, the losing party has been free during trial to make before the trial judge whatever objections the party thought were appropriate. The judge has already had a chance to rule on these objections. Where he or she has sustained objections and, where appropriate, has had an opportunity to attempt to cure errors that have taken place, the objecting party has also had an opportunity to object to the adequacy of those curative measures, or even to seek a mistrial. The losing party thus has had a full bite of the trial court apple. And, under our system, that party is now entitled to a full bite of the appellate court apple.
In filing a motion for a new trial in the trial court on the basis of trial error, then, the losing party seeks a second bite at the trial court apple. And, in order to ensure justice is done, he or she may, at the judge's discretion, be given it. But it is in this light that the standard for allowance of a motion for a new trial can be best understood. It is by no means an impossibly high burden that is placed on the losing party, and motions for a new trial are with regularity appropriately allowed by our trial court judges. But the new trial motion is not a mechanism for addressing individual errors at trial. It is an opportunity to allow the judge to take 'a survey of the whole case' to ensure that 'a miscarriage of justice' has not occurred.
Id. (citation omitted).
                                                            Page 21 of 24
            Nevertheless, the Court will briefly address the merits of the defendants' two claims of alleged attorney misconduct. "The standard a judge should apply in determining whether to allow a motion for a new trial in a civil case under Mass. R. Civ. P. 59 (a), . . . even one based on alleged attorney misconduct, is relatively high. ... `[T]he judge should not take it upon [herself or] himself to nullify a jury's verdict by granting a new trial unless it appears on a survey of the whole case that otherwise a miscarriage of justice would result.- Wahlstrom, 95 Mass. App. Ct. at 447 (internal citations omitted).
            With respect to the defendants' claim regarding Conway's closing argument, the Court is mindful that "closing argument 'may contain enthusiastic rhetoric, strong advocacy, and excusable hyperbole,' Mass. G. Evid. § 1113(b)(2), but that certain types of argument are improper." Fitzpatrick, 96 Mass. App. Ct. at 431. Statements of personal opinion about the evidence and "appeal[s] to the jurors' emotions, passions, prejudices, or sympathies," are two such types of improper argument. Id. (citation omitted).
            Here, although Conway's counsel's statement during closing argument that the defendants "trashed her" and he "thought it was awful that they did that" was an improper statement of personal opinion and appeal to sympathy, the Court cannot conclude "'on a survey of the whole case that [without a new trial] a miscarriage of justice would result.- Wahlstrom, 95 Mass. App. Ct. at 447 (internal citations omitted). The statement was fleeting and one sentence of a very lengthy closing argument that covers 38 pages of the trial transcript.
                                                            Page 22 of 24
            As for the defendants' claim regarding the repeated displaying of the SEC complaint by Conway's counsel, the Court finds that it was improper and questionably purposeful. However, "the purpose of an order granting a new trial motion is not to punish attorney misconduct. . . The new trial motion inquiry focuses on the harmful impact of the errors. It is not the egregiousness of, or the disrespect to the court shown by, attorney misconduct that the new trial motion addresses. There are other remedies for such misconduct available even in cases where it has not influenced the jury's consideration of the case to the extent that a miscarriage of justice has in fact occurred." Id. at 449 — 450. After the wrongful displays of the SEC complaint, the Court admitted some of the substance and grounds for the SEC complaint through Conway's testimony. Therefore, like the improper closing argument, the Court cannot conclude "'on a survey of the whole case that [without a new trial] a miscarriage of justice would result." Id. at 447.
            Consequently, so much of the Motion that requests a new trial based on attorney misconduct is DENIED.
                                                            Page 23 of 24
ORDER
            For the above reasons, it is HEREBY ORDERED that:
            1. So much of Defendants' Motion For New Trial, Judgment Notwithstanding The Verdict, Or Relief From Judgment Pursuant To Rules 50, 59, And 60 And Motion For Remittitur Pursuant To Rule 59 ("Motion") (Paper No. 127) that requests a new trial on damages is ALLOWED in part.
            2. Defendants' Motion For New Trial, Judgment Notwithstanding The Verdict, Or Relief From Judgment Pursuant To Rules 50, 59, And 60 And Motion For Remittitur Pursuant To Rule 59 (Paper No. 127) is otherwise DENIED.
            3. Within twenty-one (21) days of the entry of this Memorandum of Decision and Order, plaintiff Jayne Conway shall file a notice that she will accept a reduced award of damages of $4,200,000. Mass. R. Civ. P. 59(a). In the event the Court receives such notice, the Amended Judgment On Jury Verdict (Paper No. 126) shall be vacated as to damages and a Second Amended Judgment in favor of the plaintiff shall enter in the amount of $4,200,000.[19] If the Court does not receive such timely notice, it will schedule a trial assignment conference so that the parties may select a date for a new trial before a jury limited to the issue of damages on Conway's claims for fraud (Count I) and negligent misrepresentation (Count III).
/s/Jeffrey T. Karp Associate Justice, Superior Court
June 26, 2020
---------------------------
[19] Prejudgment interest thereon shall be calculated pursuant to New Hampshire law at N.H. Rev. Stat. § 336:1(11), and post-judgment interest shall be calculated pursuant to Massachusetts law in the normal course on Counts I and III of the Complaint. (See Memorandum of Decision at Paper No. 120). Declaratory judgment on Count V and judgment of dismissal on the remaining Counts of the Complaint (i.e., Counts II, IV, VI, VII, and VIII) likewise shall enter. (Id.).
                                                            Page 24 of 24
xxz